AETNA CASUALTY AND SURETY COMPANY *v.* MARGARET
BILLINGS JONES, ADMINISTRATRIX (ESTATE OF
CATHERINE MANFREDI), ET AL.
(14146)

PETERS, C. J., CALLAHAN, COVELLO, BORDEN and F. X. HENNESSY, Js.

286

Argued May 2—decision released August 20, 1991

*Lois Tanzer,* with whom, on the brief, was *Robert E. Kiley,* for the appellant (plaintiff).

*Steven L. Seligman,* with whom were *Lester Katz* and, on the brief, *James A. Armentano,* for the appellee (named defendant).

CALLAHAN, J. The principal issue in this appeal is whether an insurance company may use collateral estoppel to bar the heirs of a homicide victim from relitigating the issue of the criminal defendant's intent to cause the injuries that resulted in the victim's death.

The defendant, Russell F. Manfredi (Manfredi), was convicted of the crime of manslaughter in the first degree for the killing of his wife, Catherine Manfredi. The named defendant, Margaret Billings Jones (Jones), is the administratrix of the estate of the decedent. The plaintiff, Aetna Casualty and Surety Company, Manfredi's

insurer at the time his wife was killed, brought this declaratory judgment action to determine the extent of its obligation to pay damages awarded to Jones against Manfredi in a wrongful death action. The plaintiff moved for summary judgment claiming that, as a result of the criminal verdict, the defendants were collaterally estopped from relitigating the question of Manfredi's intent, a crucial aspect of its claim that it had no obligation to pay under its policies. That motion was denied. Jones subsequently moved for summary judgment, claiming that the state court was an inappropriate forum for the declaratory judgment action to determine the plaintiff's liability. After that motion was granted, the plaintiff appealed to the Appellate Court, claiming error in regard to both of the trial court's rulings on the motions for summary judgment. This court transferred the case to itself pursuant to Practice Book § 4023. We now reverse both of the rulings on the summary judgment motions.

The litigation in this case results from the killing of Catherine Manfredi by her husband, Russell Manfredi, on March 8, 1985. The facts concerning that incident are more fully set forth in State v. Manfredi, 17 Conn. App. 602, 555 A.2d 436 (1989), aff'd, 213 Conn. 500, 569 A.2d 506, cert. denied, U.S. , 111 S. Ct. 62, 112 L. Ed. 2d 37 (1990). In the criminal case, Manfredi pleaded not guilty to the charge of murder in violation of General Statutes § 53a-54a[1] and was

---

[1] General Statutes § 53a-54a provides in pertinent part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

tried by a jury of twelve. He elected to testify, and admitted to the jury that he had caused the death of his wife by striking her on the head with a baseball bat. He denied, however, that he had intended to cause her death. The jury returned a verdict of guilty of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (2).[2] That verdict required the jury to have found that the state had proved beyond a reasonable doubt that Manfredi had intentionally caused the death of his wife, and also to have found that he suffered from an extreme emotional disturbance at the time of the killing. He was sentenced to twenty years imprisonment.

Following the death of the decedent, Jones was appointed administratrix of her estate. In that role, on March 20, 1985, Jones brought a wrongful death action in the Superior Court against Manfredi. The plaintiff's motion to intervene in that suit was denied. On December 16, 1988, a default judgment was entered against Manfredi, and on January 18, 1989, he was ordered to pay damages in the amount of $450,000 to the estate of his deceased wife.

At the time of his wife's death, Manfredi was the named insured on a homeowner's insurance policy and a personal excess indemnity insurance policy, both of which were issued by the plaintiff. Although these policies provided coverage to Manfredi for bodily injury claims, both contained language limiting coverage only

---

[2] General Statutes § 53a-55 (a) (2) provides in pertinent part: "A person is guilty of manslaughter in the first degree when . . . (2) with intent to cause the death of another person, he causes the death of such person . . . under circumstances which do not constitute murder because he committed the proscribed act or acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection . . . ."

to those injuries that were not intentionally caused by the insured. Because of its potential liability for Manfredi's fatal injuries to his wife, the plaintiff, on November 26, 1986, filed a declaratory judgment action in the Superior Court. That action is the subject of this appeal.

The complaint asserted that the insurance policies provided by the plaintiff did not cover the injuries suffered by the decedent because Manfredi intended to injure her. On December 18, 1986, Jones moved to strike the complaint, arguing that pursuant to Practice Book § 390 (c)[3] the declaratory judgment action was inappropriate and that the parties should seek redress by "some other form of procedure." The motion to strike was denied. On November 9, 1987, the plaintiff moved for summary judgment, claiming that the finding by the jury in Manfredi's criminal trial that he had intentionally caused the death of his wife collaterally estopped both Manfredi and Jones from relitigating the issue of Manfredi's intent. The trial court, *O'Neill, J.*, denied that motion on the basis that Manfredi's intent presented a question of fact that was inappropriate to determine by a motion for summary judgment. This ruling presents one of the bases of this appeal. On November 9, 1987, a default judgment was entered against Manfredi in the declaratory judgment action.

On April 11, 1989, during the pendency of the declaratory judgment action, Jones filed suit in the federal District Court for the District of Connecticut pursuant to General Statutes (Rev. to 1989) § 38-175[4] request-

---

[3] Practice Book § 390 provides in pertinent part: "The court will not render declaratory judgments upon the complaint of any person . . .

"(c) where the court shall be of the opinion that the parties should be left to seek redress by some other form of procedure . . . ."

[4] General Statutes (Rev. to 1989) § 38-175, the "direct action statute," provides in part: "Upon the recovery of a final judgment against any per-

ing that the judgment in the wrongful death action be enforced against the plaintiff. On June 7, 1989, the plaintiff moved to stay the federal proceeding pending a decision on the collateral estoppel question in the state court. After the motion for a stay was denied without prejudice, the plaintiff filed a motion for summary judgment in the federal court raising the same collateral estoppel issue that it had raised in the state court. Upon receipt of the motion, the federal court, on February 8, 1990, sua sponte, stayed the federal proceeding "to await resolution of the parallel state action."

On February 23, 1990, Jones moved for summary judgment in the state court declaratory judgment action. In support of her motion, Jones claimed, as she had in her earlier motion to strike, that "some other form of procedure" was more appropriate than the state declaratory judgment action. Although the federal court had stayed the action in that court in anticipation of the state court's resolution of the issues, Jones suggested that the federal court was the more appropriate forum to hear the case. On July 2, 1990, the trial court, *Maloney, J.,* granted Jones' motion for summary judgment on the ground that the plaintiff's declaratory judgment action was "superfluous" in light of the pending federal action. Presumably, this was a determination under Practice Book § 390 (c) "that the parties should be left to seek redress by some other form of

son, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

procedure."[5] It is that ruling that provides the second of the bases for this appeal.

On appeal, the plaintiff claims that the trial court improperly granted Jones' motion for summary judgment and denied its motion for summary judgment. The plaintiff argues that Jones' motion should not have been granted because: (1) her claims were inappropriate for a motion for summary judgment and were more properly the subject of a motion to strike; (2) under the doctrine of the law of the case she was precluded from reasserting claims raised in a prior motion to strike; and (3) the state court was the proper forum, and its declaratory judgment action the better procedure to decide the issues raised.[6]

The plaintiff further claims that the trial court erred in failing to grant its earlier motion for summary judgment. With respect to this claim, the plaintiff asserts that the motion should have been granted because: (1) both Manfredi and Jones failed to comply with Practice Book § 380[7] in opposing the plaintiff's motion for

---

[5] "[Practice Book] Sec. 390—CONDITIONS

"The court will not render declaratory judgments upon the complaint of any person:

"(a) unless he has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to his rights or other jural relations; or

"(b) unless there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties; or

"(c) where the court shall be of the opinion that the parties should be left to seek redress by some other form of procedure; or

"(d) unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof."

[6] Because we agree with the plaintiff's contention that the state court was the most appropriate forum for litigation, we need not address the first and second procedural claims concerning the granting of Jones' motion.

[7] Practice Book § 380 provides: "A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. The motion shall be placed on the short calendar to be held not less than fifteen days following the filing of

summary judgment; (2) there is no issue of material fact with respect to Manfredi's intent to injure his wife because that issue was conclusively determined by his criminal jury and principles of collateral estoppel bar him from relitigating that issue; and (3) because Jones is in privity with Manfredi, collateral estoppel bars her from relitigating the issue of his intent.[8]

## I

We first address the plaintiff's claim that the trial court improperly granted Jones' motion for summary judgment. At the time that she moved for summary judgment in the state court, she had previously filed an action pursuant to General Statutes (Rev. to 1989) § 38-175 in the federal district court to compel the plaintiff to pay the damages awarded to the decedent's estate in the wrongful death action against Manfredi. The state court granted her motion, reasoning that to allow the federal court to decide the collateral estoppel issue in connection with Jones' lawsuit was a more appropriate procedure than the state declaratory judgment action. The plaintiff asserts that the declaratory judgment action was the proper procedural vehicle and that the state court was the proper forum. We agree.

When reviewing a trial court's ruling on a motion for summary judgment, we must decide whether the trial court erred in determining that there was no "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Prac-

the motion and the supporting materials, unless the court otherwise directs. The adverse party prior to the day the case is set down for short calendar shall file opposing affidavits and other available documentary evidence. Affidavits, and other documentary proof not already a part of the file, shall be filed and served as are pleadings."

[8] Because we agree with the plaintiff's claims regarding collateral estoppel and privity, we do not address the procedural claims relating to compliance with Practice Book § 380.

tice Book § 384;[9] *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 111, 491 A.2d 368 (1985); *D.H.R. Construction Co.* v. *Donnelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980). Despite the fact that Jones entitled her motion "Motion For Summary Judgment," we conclude that both the substance of the motion and the trial court's ruling on the motion demonstrate that it is more accurately described as a motion to strike. The motion is not predicated on a claim that there are no genuine issues of material fact to be litigated. Instead, it simply states that the state declaratory judgment action was not the best avenue for litigating the factual issues that do exist. Moreover, as a practical matter, the trial court treated Jones' motion as if it were a motion to strike.[10] We have stated that whether a court should grant declaratory relief is properly decided by a motion to strike. *England* v. *Coventry,* 183 Conn. 362, 365, 439 A.2d 372 (1981); *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173 Conn. 352, 360, 377 A.2d 1099 (1977). Therefore, we shall address her motion for summary judgment as if it were a properly presented motion to strike.[11] See *McCutcheon & Burr, Inc.* v. *Berman,* 218 Conn. 512, 526–27, 590 A.2d 438 (1991); *England* v. *Coventry,* supra.

"[A] successful motion to strike an action for a declaratory judgment upon the ground of available alternative means of redress . . . must show that the court could not in the exercise of sound discretion permit the

[9] Practice Book § 384 provides: "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

[10] In granting Jones' motion, the trial court stated, "Motion to strike granted." (Emphasis added.)

[11] Because neither of the parties has raised the issue, we do not address whether a motion to strike is the appropriate procedural mechanism for challenging the propriety of a declaratory judgment action after an answer has been filed by a defendant. See Practice Book §§ 112, 113.

action to proceed." *England* v. *Coventry,* supra, 365. In granting Jones' motion, the trial court apparently decided that the federal district court, in which she had filed a subrogation action under § 38-175, was the more appropriate forum to hear the plaintiff's claims. The trial court's order states that "[t]he question of the plaintiff's liability under its insurance policies is the sole issue before the court in *Jones* v. *Aetna Casualty & Surety Co.,* now pending in the federal district court. Accordingly, this action is superfluous . . . ."

The trial court's conclusion that the federal court was the more appropriate arena in which to hear the issues raised by this case was, under the circumstances, an abuse of discretion. At the time of Jones' motion for summary judgment, the declaratory judgment action had been pending in the state court for three and one-half years. Jones initiated the federal court action nearly two and one-half years after the declaratory judgment action had been filed. Further, as a direct result of the state declaratory judgment action, the federal court, sua sponte, stayed the federal proceedings to await the decision of the state court. In granting the stay, the federal court noted that the issues of law in the state and federal courts *"are* identical." (Emphasis in original.) The court also noted that "[t]he issues to be decided in this case are purely matters of state law" and "[n]ot only does state law provide the exclusive rule of decision, but the issue of law is one of first impression in Connecticut." For all of the reasons cited above, namely, that this is an important issue of purely state law, it is an issue of first impression, the state action was filed well in advance of the federal action, and the federal court had previously stayed the federal action in deference to the state proceeding, we conclude that the trial court abused its discretion in granting Jones' motion for summary judgment.

## II

We now address the plaintiff's claim that its own motion for summary judgment was improperly denied.[12] The plaintiff contends that, because of exclusions provided for in the insurance policy, it is liable to Jones only if Manfredi injured his wife unintentionally. Further, it asserts that the criminal trial resolved that issue in its favor and that principles of collateral estoppel bar relitigation. We agree.

"The party moving for summary judgment ' "has the burden of showing the absence of any genuine issue

[12] While the plaintiff argues that summary judgment should be rendered against both Manfredi and Jones, we do not address the claim against Manfredi because a valid default judgment had already been rendered against him at the time that the plaintiff's motion for summary judgment was denied. "[T]he entry of a default operates as a confession by the defaulted defendant of the truth of the material facts alleged in the complaint which are essential to a judgment. Thus, the defaulted defendant is precluded from making any further defense to the action." *Costello* v. *Hartford Institute of Accounting, Inc.,* 193 Conn. 160, 161 n.1, 475 A.2d 310 (1984).

Although neither party raised the issue, we also note that the denial of a motion for summary judgment is not a final judgment and therefore is not ordinarily appealable. Practice Book § 4000; *Denby* v. *Voloshin Cadillac, Inc.,* 3 Conn. App. 181, 181–82 n.3, 485 A.2d 1360, cert. dismissed, 196 Conn. 802, 491 A.2d 1105 (1985). We have also held that, "absent exceptional circumstances, 'a denial of a motion for summary judgment is not appealable where a full trial on the merits produces a verdict against the moving party.' *Greengarden* v. *Kuhn,* 13 Conn. App. 550, 552, 537 A.2d 1043 (1988)." *Gurliacci* v. *Mayer,* 218 Conn. 531, 541 n.7, 590 A.2d 914 (1991).

This case, however, did not go to trial and therefore the rationale for the rule adopted in *Gurliacci,* namely, that a decision based on more evidence should preclude review of a decision based on less evidence, is not applicable here. The situation presented in this case is similar to that of a defendant who cannot appeal from the denial of a motion to strike a complaint or from the granting of a motion to strike a special defense, but who can obtain review of such rulings in the context of an appeal from a subsequent final judgment. *Breen* v. *Phelps,* 186 Conn. 86, 90, 439 A.2d 1066 (1982). We conclude, therefore, that the denial of the plaintiff's motion for summary judgment is reviewable.

as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law." ' *D.H.R. Construction Co.* v. *Donnelly,* [supra, 434]." *Mingachos* v. *CBS, Inc.,* supra, 111. In this case, the insurance policies unambiguously provide that the plaintiff is not liable for injuries intentionally caused by the insured. Therefore, if Jones is collaterally estopped from relitigating the issue of intent, there are no genuine issues of material fact and her claim for recovery necessarily fails. Our conclusion that collateral estoppel bars relitigation of the issue of Manfredi's intent is dispositive of the plaintiff's claim that its motion for summary judgment was improperly denied.[13]

Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. *Ashe* v. *Swenson,* 397 U.S. 436, 445, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970); *State* v. *Hope,* 215 Conn. 570, 584, 577 A.2d 1000 (1990), cert. denied,      U.S.    , 111 S. Ct. 968, 112 L. Ed. 2d 1054 (1991); *In re Juvenile Appeal (83-DE),* 190 Conn. 310, 316, 460 A.2d 1277 (1983). " 'For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment.' " *Virgo* v. *Lyons,* 209 Conn. 497, 501, 551 A.2d 1243 (1988). The doctrine of collateral estoppel is "based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." *In re Juvenile Appeal (83-DE),* supra, 318.

---

[13] While in her brief Jones has invoked her constitutional rights to trial by jury as provided in the constitution of Connecticut, article first, §§ 10 and 19, she conceded at oral argument that her constitutional claims would be unavailing if this court concluded that collateral estoppel was applicable.

There is no question that a determination of Manfredi's intent was necessary to the judgment of the criminal court and that the jury verdict represents a decision on the issue of intent. The plaintiff's claim, therefore, raises three significant questions: (a) Is the issue as to which collateral estoppel is sought to be invoked—Manfredi's intent—identical in both the prior criminal action and this action? (b) May a litigant who was not a party to a prior action invoke a verdict arrived at after trial to estop collaterally one who was a party or in privity with a party to the prior action? (c) When the victim of an insured defendant derives her rights to collect insurance proceeds directly from the rights of the insured defendant, are the two in privity for purposes of collateral estoppel? Because we answer all three questions in the affirmative, we conclude that the plaintiff's motion for summary judgment should have been granted.

## A

In order for collateral estoppel to bar the relitigation of an issue in a later proceeding, the issue concerning which relitigation is sought to be estopped must be identical to the issue decided in the prior proceeding. "To establish whether collateral estoppel applies, the court must determine what facts were necessarily determined in the first trial, and must then assess whether the [party] is attempting to relitigate those facts in the second proceeding." *State* v. *Hope,* supra, 584.

In the declaratory judgment action before us, the plaintiff asserts that it is not responsible for payment of the wrongful death judgment rendered against Manfredi because the issue of his intent was previously decided in the plaintiff's favor. The plaintiff contends that because the language of the insurance policies issued to Manfredi excludes coverage for injuries intentionally caused by the insured, and because a criminal jury

found beyond a reasonable doubt that he intentionally killed his wife, collateral estoppel bars relitigation of that issue.

In order for collateral estoppel to be applicable, the meaning of the term "intent," as that word is used in the insurance policy, must necessarily be included in the definition of intent applied by the jury in Manfredi's criminal trial. We conclude that, if Manfredi acted with the intent required by § 53a-55 (a) (2), it logically and necessarily follows that he also acted with the intent delineated by the insurance policies. Therefore, the issues are identical for collateral estoppel purposes.

At his criminal trial, Manfredi was charged with the crime of murder in violation of § 53a-54a (a). Because the jury found that he was suffering from an extreme emotional disturbance at the time of the offense, he was found guilty of the lesser included offense of manslaughter in the first degree in violation of § 53a-55 (a) (2). In order to have found Manfredi guilty under § 53a-55 (a) (2), the jury necessarily had to have found that he had the "intent to cause the death" of his wife. Further, the jury was instructed in conformance with General Statutes § 53a-3 (11)[14] that in order to find that Manfredi intended to cause the death of his wife, it had to conclude beyond a reasonable doubt that he had the "conscious objective" to cause her death. The jury's verdict of guilty represents its finding beyond a reasonable doubt that Manfredi caused the death of his wife at a time when it was his conscious objective to do so. While the jury found that he suffered from an extreme emotional disturbance,

[14] General Statutes § 53a-3 (11) provides in pertinent part: "Except where different meanings are expressly specified, the following terms have the following meanings when used in this title . . .

"(11) A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

the presence of an extreme emotional disturbance " 'does not make the action any less intentional.' " *State* v. *Elliot,* 177 Conn. 1, 6, 411 A.2d 3 (1979), citing *People* v. *Patterson,* 39 N.Y.2d 288, 302, 347 N.E.2d 898, 383 N.Y.S.2d 573 (1976), aff'd, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977).

Both of the insurance policies under which Manfredi was the insured provide that certain conduct will be excluded from coverage under the policies. In particular, the policies provide that injuries intentionally caused by the insured will not be covered by the plaintiff.[15] When the terms of an insurance policy are clear and unambiguous, they will be given their plain and ordinary meaning. *Beach* v. *Middlesex Mutual Assurance Co.,* 205 Conn. 246, 249, 532 A.2d 1297 (1987). Because the plain and ordinary meaning of the word "intent" as used in the insurance policies is encompassed by the definition of intent set forth in §§ 53a-55 (a) (2) and 53a-3 (11), we conclude that the issue of intent, at the criminal trial and under the insurance policies, is identical. One could not logically find that the necessary criminal intent was present but that the intent that operates to exclude coverage under the insurance policy was not. Therefore, the issues are the same for collateral estoppel purposes.

B

We next consider the issue of mutuality of parties. The plaintiff asserts that the mutuality of parties rule should not prevent an insurer from collaterally estop-

---

[15] The homeowner's policy states that "Medical Payments to Others do not apply to bodily injury or property damage . . . which is *expected or intended by the insured.*" (Emphasis added.) The excess indemnity policy similarly states, "This insurance does not apply . . . to personal injury or property damage arising out of any act committed by or at the direction of the insured *with intent to cause personal injury* or property damage . . . ." (Emphasis added.)

ping an insured defendant from relitigating an issue that was decided at a prior trial. Jones, however, asserts that one who was not a party to the original proceeding may not later collaterally estop parties who were. We conclude, after a review of the authorities, that mutuality of parties is no longer required to invoke collateral estoppel.

Historically, the mutuality of parties rule meant that parties who were not actually adverse to one another in a prior proceeding could not assert collateral estoppel against one another in a subsequent action. For a time, the mutuality of parties rule was commonly accepted. See annot., 18 A.L.R.2d 1287. The United States Supreme Court once held that the rule of mutuality was binding in disputes arising under federal common law. *Bigelow* v. *Old Dominion Copper Co.*, 225 U.S. 111, 127, 32 S. Ct. 641, 56 L. Ed. 1009 (1912). In the first Restatement of Judgments, the American Law Institute, also, accepted the doctrine of mutuality. See Restatement, Judgments § 82.[16] In accord with these authorities, this court, too, accepted the general proposition that mutuality of parties was a prerequisite to the successful invocation of collateral estoppel. *Brockett* v. *Jensen,* 154 Conn. 328, 338, 225 A.2d 190 (1966).

While once commonly accepted, the mutuality doctrine has now widely been abandoned. As Judge Traynor wrote in his landmark decision on this issue, "[n]o satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend." *Bernhard*

---

[16] The Restatement of Judgments, § 82 provides in pertinent part: "The rendition of a judgment in an action does not conclude parties to the action who are not adversaries under the pleadings as to their rights inter se upon matters which they did not litigate . . . between themselves."

v. *Bank of America,* 19 Cal. 2d 807, 812, 122 P.2d 892 (1942). Similarly, since *Bigelow* v. *Old Dominion Copper Co.,* supra, the United States Supreme Court has unequivocally rejected the mutuality rule for purposes of the federal common law. *Parklane Hosiery Co.* v. *Shore,* 439 U.S. 322, 326–33, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979); *Blonder-Tongue Laboratories, Inc.* v. *University of Illinois Foundation,* 402 U.S. 313, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971). Further reflecting this trend, the American Law Institute's second Restatement of Judgments has also eliminated the requirement of mutuality. 2 Restatement (Second), Judgments § 85.[17]

Although this court has not recently addressed this question,[18] the Connecticut Appellate Court has rendered two decisions concerning the mutuality of parties rule. *Griffin* v. *Parker,* 22 Conn. App. 610, 579 A.2d 532 (1990), rev'd on other grounds, 219 Conn. 363, 593 A.2d 124 (1991); *Gionfriddo* v. *Gartenhaus Cafe,* 15 Conn. App. 392, 546 A.2d 284 (1988), aff'd on other grounds, 211 Conn. 67, 557 A.2d 540 (1989). In both *Griffin* and *Gartenhaus Cafe,* the Appellate Court abandoned the mutuality rule. Numerous other jurisdictions have also eliminated the requirement, so that currently "while mutuality might not be a dead letter yet, it is mortally wounded." T. Sawayga, "Use of Criminal Convictions in Subsequent Civil Proceedings: Statutory Collateral Estoppel Under Florida and Federal Law and the Intentional Act Exclusion Clause," 40 U. Fla. L.

---

[17] The Restatement (Second) of Judgments, § 85 provides in pertinent part: "With respect to issues determined in a criminal prosecution . . . (2) A judgment in favor of the prosecuting authority is preclusive in favor of a third person in a civil action . . . (a) Against the defendant in the criminal prosecution . . . ."

[18] In *Gionfriddo* v. *Gartenhaus Cafe,* 211 Conn. 67, 71, 557 A.2d 540 (1989), we stated that "in deciding this case we need not reach the issue of whether this jurisdiction continues to adhere to the doctrine of mutuality of estoppel . . . ."

Rev. 479, 488–90 n.55 (1988); see *Merritt* v. *Quaker Oats Co.,* 538 F. Sup. 24 (S.D. Miss. 1981); *Travelers Indemnity Co.* v. *Walburn,* 378 F. Sup. 860, 862–65 (D.D.C. 1974); *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co.,* 58 Cal. 2d 601, 604, 375 P.2d 439, 25 Cal. Rptr. 559 (1962), cert. denied, 372 U.S. 966, 83 S. Ct 1091, 10 L. Ed. 2d 130 (1963); *Safeco Ins. Co. of America* v. *Yon,* 118 Idaho 367, 371–72, 796 P.2d 1040 (1990); *Aetna Life & Casualty Co.* v. *Johnson,* 207 Mont. 409, 673 P.2d 1277 (1984); *New Jersey Manufacturers Ins. Co.* v. *Brower,* 161 N.J. Super. 293, 298, 391 A.2d 923 (1978); *Read* v. *Sacco,* 49 App. Div. 2d 471, 473, 375 N.Y.S.2d 371 (1975).

We agree with the Appellate Court and join those jurisdictions that have concluded that the mutuality of parties rule is unsound. To allow a party who has fully and fairly litigated an issue at a prior trial to avoid the force of a ruling against him simply because he later finds himself faced by a different opponent is inappropriate and unnecessary. First, the mutuality of parties rule systematically diminishes the stability of judgments. *Blonder-Tongue Laboratories, Inc.* v. *University of Illinois Foundation,* supra, 328–29. The rule allows a single party to present antithetic claims on identical issues in separate actions and to obtain favorable decisions in both solely because his opponent has changed. Additionally, increasingly important notions of judicial economy are served by the abandonment of the doctrine of mutuality. *Bruszewski* v. *United States,* 181 F.2d 419, 421 (3d Cir.), cert. denied, 340 U.S. 865, 71 S. Ct. 87, 95 L. Ed. 632 (1950). In light of the scarcity of judicial time and resources, the repeated litigation of issues that have already been conclusively resolved by a court carries a considerable price tag in both money and time. Finally, we perceive no sound reason, and Jones has suggested none, to adhere to the doctrine of mutuality.

In this case, Manfredi was convicted of manslaughter in the first degree because a criminal court found him, beyond a reasonable doubt, to have intentionally caused the death of his wife. We will not allow that judgment to be questioned now, in a civil court, on the sole basis that the plaintiff was not a party to the original criminal action.[19] While the case may arise where a lack of mutuality of parties would render the use of collateral estoppel patently unfair,[20] that rule will no longer operate automatically to bar the use of collateral estoppel, and does not bar its application in this case.

## C

The final issue raised by this appeal is whether Jones is in privity with Manfredi for purposes of collateral estoppel. Jones asserts that the decedent's estate is not in privity with the interests of the insured, Manfredi. The plaintiff, on the other hand, contends that the two are in privity. We agree with the plaintiff.

Collateral estoppel may be invoked against a party to a prior adverse proceeding or against those in privity with that party. *State* v. *Fritz*, 204 Conn. 156, 172, 527 A.2d 1157 (1987); *P. X. Restaurant, Inc.* v. *Windsor*, 189 Conn. 153, 161, 454 A.2d 1258 (1983); *State* v.

---

[19] Because this is a declaratory judgment action and the plaintiff insurer is invoking collateral estoppel to avoid providing coverage, the collateral estoppel invoked here is a hybrid form of offensive collateral estoppel. While courts have attempted to distinguish between offensive and defensive use of collateral estoppel; see, e.g., *Blonder-Tongue Laboratories, Inc.* v. *University of Illinois Foundation*, 402 U.S. 313, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971); *Gionfriddo* v. *Gartenhaus Cafe*, 15 Conn. App. 392, 546 A.2d 284 (1988), aff'd, 211 Conn. 67, 557 A.2d 540 (1989); we do not recognize any formalistic delineation between the two in this case. As long as the party to the original suit has had a full and fair opportunity to litigate the issue and the issue was finally and necessarily decided by the court, the distinction between offensive and defensive collateral estoppel is inconsequential. See *Parklane Hosiery Co.* v. *Shore*, 439 U.S. 322, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979); *Read* v. *Sacco*, 49 App. Div. 2d 471, 473, 375 N.Y.S.2d 371 (1975).

[20] See Part II C, infra, of this opinion.

*Wilson,* 180 Conn. 481, 486, 429 A.2d 931 (1980). While it is commonly recognized that privity is difficult to define, the concept exists "to ensure that the interests of the party against whom collateral estoppel is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding." *State* v. *Fritz,* supra, 173. A " 'key consideration' " in determining the existence of privity is " 'the sharing of the same legal right by the parties allegedly in privity.' " Id.

Various jurisdictions have addressed the particular question of whether the victim of a criminal defendant is in privity with the defendant for purposes of collateral estoppel when that doctrine is sought to be applied to prevent recovery of insurance proceeds. Several of those jurisdictions have found privity to exist in these circumstances because the criminal defendant and his victim shared a legal right to recover damages. See *Safeco Ins. Co. of America* v. *Yon,* supra, 371–72; *Aetna Life & Casualty Co.* v. *Johnson,* supra; *New Jersey Manufacturers Ins. Co.* v. *Brower,* supra, 299; *D'Arata* v. *New York Central Mutual Fire Ins. Co.,* 152 App. Div. 2d 1004, 543 N.Y.S.2d 810 (1989), aff'd, 76 N.Y.2d 659, 564 N.E.2d 634, 563 N.Y.S.2d 24 (1990); *State Farm Fire & Casualty Co.* v. *Reuter,* 299 Or. 155, 160–68, 700 P.2d 236 (1985); but see *Clemmer* v. *Hartford Ins. Co.,* 22 Cal. 3d 865, 874–77, 587 P.2d 1098, 151 Cal. Rptr. 285 (1978) (concluding that the element of intent could not be effectively isolated); *Massachusetts Property Ins.* v. *Norrington,* 395 Mass. 751, 481 N.E.2d 1364 (1985); *Rullo* v. *Rullo,* 121 N.H. 299, 428 A.2d 1245 (1981); 2 Restatement (Second), Judgments § 85, illustration 10.

In *Safeco Ins. Co. of America* v. *Yon,* supra, 368, the heirs of a murder victim filed a wrongful death action against the insured killer, who was found by the jury in his criminal trial to have intentionally killed the vic-

tim. The defendant was insured by Safeco under a homeowner's policy at the time of the killing. Thereafter, Safeco brought a declaratory judgment action against the heirs of the victim asserting that it had no duty to defend the insured because he had intentionally injured the victim and therefore was not covered by the insurance policy. Id., 368–69. The insurance company asserted collateral estoppel against the heirs to prevent relitigation of the issue of the killer's intent, which was resolved against him at his criminal trial. The court stated: "We observe that any claims that [the victim's] heirs have upon the coverage of the insurance policy stem from the contractual relationship between Safeco and [the criminal defendant]. Consequently, the wrongful-death claimants' rights are only as good as the rights that [the criminal defendant] can assert against Safeco under the insurance contract. Therefore, in this limited context we conclude that this relationship is sufficient to constitute 'privity' for the purposes of collateral estoppel." Id., 371. Similarly, in *D'Arata* v. *New York Central Mutual Fire Ins. Co.,* supra, and *State Farm Fire & Casualty Co.* v. *Reuter,* supra, collateral estoppel was effectively asserted against parties who were "judgment creditors" of criminal defendants convicted after trial.

In the instant case, we conclude that the insured, Manfredi, and his wife's estate shared an identical legal right in any potential proceeds derived from the contractual relationship between Manfredi and his insurance company. Section 38-175 provides Jones with her means of recovery against the insurance company. This statute specifically grants Jones a right, identical to the right of Manfredi, to recover on the insurance policy. As in *D'Arata* v. *New York Central Mutual Fire Ins. Co.,* supra, and *State Farm Fire & Casualty Co.* v. *Reuter,* supra, Jones is a judgment creditor and subrogee of Manfredi. If Manfredi fails to qualify for

coverage under the policy, Jones, too, would fail to qualify. In this sense, the rights of the estate are entirely dependent upon and limited by the rights of Manfredi. Therefore, we conclude that Jones and Manfredi share a legal interest and that they are in privity.

Whenever collateral estoppel is asserted, but especially in those cases where there is a lack of mutuality or the doctrine of privity is raised, the court must make certain that there was a full and fair opportunity to litigate. The requirement of full and fair litigation ensures fairness, which is a "crowning consideration" in collateral estoppel cases. *Griffin* v. *Parker,* supra, 22 Conn. App. 621; *Read* v. *Sacco,* supra. In determining whether there was full and fair litigation, the seriousness of the allegations or the criminal charge at the prior hearing is a factor to be considered. See *Griffin* v. *Parker,* supra, 22 Conn. App. 621 n.4; see also *Merritt* v. *Quaker Oats Co.,* supra; *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co.,* supra; *Aetna Life & Casualty Co.* v. *Johnson,* supra. If the offense charged is of a minor or trivial nature, a defendant might not be sufficiently motivated to challenge the allegations made at trial. In such a case, it might be unfair to allow collateral estoppel to be asserted later against him. Similarly, if the nature of the hearing carries procedural limitations that would not be present at a later hearing, the party might not have a full and fair opportunity to litigate.[21]

In this case, Manfredi was accused of murdering his wife. If convicted, he faced a potential sentence of life imprisonment. Therefore, his motivation to prove a lack

---

[21] Jones asserts that the estate of the victim had no opportunity to become a party to the murder prosecution against Manfredi. While opportunity to join litigation is a factor to consider when determining privity, it is not dispositive. If that factor were controlling, one could never be in privity with parties to a criminal prosecution because that litigation is obviously not subject to the civil rules of joinder and intervention.

of intent was compelling. Further, Manfredi was pro-
vided with the full range of constitutional protections
available to criminal defendants, including the right to
a jury of twelve and the right to require the state to
prove him guilty beyond a reasonable doubt.[22] There
can be no question that the issue of his intent was thor-
oughly litigated in a full adversary proceeding.

The judgment is reversed and the case is remanded
with direction to render judgment in favor of the
plaintiff.

In this opinion the other justices concurred.

---

[22] We need not decide in this case whether a judgment rendered on the
basis of a criminal defendant's guilty plea could satisfy the requirement
of full and fair litigation for the purposes of collateral estoppel.