[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
On December 30, 1993, the plaintiffs, Charles J. Irving, Nancy Z. Dubicki, Garon Camassar and Victorian Associates, filed a complaint against the defendant, St. Paul Fire Marine Insurance Company (St. Paul), alleging the defendant's failure to pay in full a loss under the terms of an insurance policy issued to the plaintiffs by the defendant. On December 1, 1994, the defendant filed a motion for summary judgment, accompanied by a supporting memorandum of law, defendant's requests to admit and a copy of insurance policy RP06605111. On January 9, 1995, the plaintiffs filed a memorandum of law in opposition to the defendant's motion to strike, the affidavit of Garon Camassar and a statement of loss. On January 17, 1995, the defendant filed a reply memorandum.
The plaintiffs' complaint alleges the following facts. On March 1, 1992, in consideration of the premium specified in the policy, the .defendant agreed to insure the plaintiffs against loss by certain risks, not exceeding the limits specified in the property covering real property of the plaintiff, Victorian Associates, located at 181 Broad Street, New London, Connecticut. CT Page 6899 On December 25, 1992, said premises and the contents thereof sustained damage by water. The policy was in full force and effect at the time of the loss and such loss was included in the terms and conditions of the policy.
The plaintiffs allege that they have performed all conditions on their part and have given the defendant due notice and proof of the loss in accordance with the terms of the policy. The plaintiffs allege that the defendant has not paid the plaintiffs' loss in full.
The defendant served the plaintiffs with its requests for admission on September 3, 1994[1]. The defendant claims that the plaintiffs failed to respond to its requests for admission. The plaintiffs have not filed any pleadings to indicate otherwise. Therefore, the plaintiffs are deemed to have admitted the truth of each and every statement contained in the defendant's requests to admit dated September 2, 1994, by virtue of their failure to respond to the same within thirty days of the service thereof.
DISCUSSION
"In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather 'to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988). Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Suarez v.Dickmont Plastics Corp., 229 Conn. 99, 105, 639 A.2d 507 (1994).
The moving party "has, the burden of showing the absence of any genuine issue as to all material facts which, under the applicable principles of substantive law, entitle him to a judgment as a matter of law." (Internal quotation marks omitted.) Id. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . and he is given the benefit of all favorable inferences that can be drawn." Catz v. Rubenstein,201 Conn. 39, 49, 513 A.2d 98 (1986). "The test is whether a party would be entitled to a directed verdict on the same facts."Suarez v. Dickmont Plastics Corp., supra, 229 Conn. 105-06. "`A summary disposition . . . should be on evidence which a jury CT Page 6900 would not be at liberty to disbelieve and which would require a directed verdict for the moving party.'" Whitney Avenue Corp. v.Heritage Canal Development Associates, 33 Conn. App. 563, 566,636 A.2d 1377 (1994), quoting Batick v. Seymour, 4186 Conn. 632,647, 443 A.2d 471 (1982).
"A motion for summary judgment shall be supported by such documents as maybe appropriate, including but not limited to affidavits, certified testimony of transcripts under oath, disclosures, written admissions and the like. . . ." AetnaCasualty Surety Co. v. Jones, 220 Conn. 285, 291, n. 7,596 A.2d 414 (1991), quoting Practice Book § 380.
"Under our law, the terms of an insurance policy are to be construed according to the general rules of contract construction." Heyman Associates No. 1 v. Insurance Co. ofPennsylvania, 231 Conn. 756, 769-70, A.2d (1995). "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. Hammer v. Lumberman's MutualCasualty Co., 214 Conn. 573, 583, 573 A.2d 699 (1990). "The determinative question is the intent of the parties, that is, what coverage the . . . [plaintiff] expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy. If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. However, [w]hen the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. (Citations omitted; internal quotation marks omitted.) Heyman Associates No. 1 v.Insurance Co. of Pennsylvania, supra, 231 Conn. 770.
"However, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." Hammer v.Lumberman's Mutual Casualty Co., supra, 214 Conn. 584. "Our jurisprudence makes clear . . . that [a]lthough ambiguities are to be construed against the insurer, when the language is plain, no such construction is to be applied. Indeed, courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently CT Page 6901 intended by the parties." (Citations omitted; internal quotation marks omitted.) Heyman Associates No. 1 v. Insurance Co. ofPennsylvania, supra, 231 Conn. 770-71.
Policy RP06605111 provides, in pertinent part:
Loss Determination.
 Extra expenses. We'll cover extra expense for operating when these expenses are over and above what it would normally cost to conduct your business had no damage occurred.
(See exhibit B, attached to the defendant's memorandum in support of its motion for summary judgment, p. 24.)
Policy RP06605111 defines "extra expenses" as:
 the necessary expenses you incur during the period of restoration that you wouldn't have incurred if there had been no direct physical loss or damage to property caused by a covered cause of loss.
(See exhibit B, attached to the defendant's memorandum in support of its motion for summary judgment, p. 4.)
In the present case, under the terms of the respective written leases in effect between Irving, Dubicki and Camassar, as lessees, and Victorian Associates, as lessor, Irving, Dubicki and Camassar state that they would have been obligated to pay, in the aggregate, $55,934.00 in rent to Victorian Associates for the period of time between and including January 1, 1993 and May 31, 1993, had the event of loss at the insured premises not occurred. (See Defendant's Requests to Admit, ¶ 13, dated September 2, 1994) Furthermore, Irving, Dubicki and Camassar claim to have incurred certain fees and expenses for the relocation to, and temporary rental of, the Mariner Square office space and the subsequent return to the premises, in an aggregate amount which is less than $55,934.00. (See Defendant's Requests to Admit, ¶ 15, dated September 2, 1994.) In fact, both the affidavit of Garon Camassar and the statement of loss submitted with the plaintiffs' memorandum in support of the their objection to the defendant's motion for summary judgment, state that the incurred "extra expenses" amount only to $34,297.25. CT Page 6902
The contract language of the subject insurance policy is clear and unambiguous. The relevant provisions of the subject policy provide that the defendant will cover extra expenses to the extent that these expenses exceed what it would have normally cost the plaintiffs to conduct their business had no loss occurred. In the present case, the normal operating costs for the relevant period would have been $55,934.00, and the amount of the claimed "extra expense" is $34,297.25. Therefore, the loss claimed by the plaintiffs does not fall within the proffered provision of the subject insurance policy.
Accordingly, the defendant's motion for summary judgment is hereby granted
Hurley, J.