[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT
In this action in which the Town of Haddam (the "Town") seeks to recover on a subdivision bond (the "Bond") issued by a predecessor company of the defendant Axa Global Risks U.S. Insurance Company ("Axa") CT Page 3722 the Town and Axa have filed cross Motions for Summary Judgment.[1] For the reasons set forth below, the court grants the Town's motion and denies the motion filed by Axa.
Facts
In this action the Town seeks to collect the proceeds of a certain subdivision bond issued pursuant to the approval of a residential subdivision in the Town of Haddam. The subject property, known as Chatham Lake Subdivision, consists of approximately 360 acres and 72 residential building lots together with approximately 2.9 miles of subdivision roadway and associated drainage, fire protection facilities and utilities. The subdivision was approved with conditions on September 18, 1989. That approval required, as a condition to the developer selling lots, inter alia, that a bond in an amount acceptable to the Town be provided. Once the bond was provided the developer could then begin to sell lots. Prior to the bond being posted, the developer could perform all necessary work on public improvements as shown on the approved plans.
On or about July 7, 1994, the project received its final approval. That final approval required the posting of a bond for site improvements in the amount of $850,000.00 because the public improvements were not 100% complete. The developer, Nason Group, LLC, obtained the performance bond which is at issue in this case. The Bond was executed on August 9, 1994 and provides that Nason Group, LLC is the principal and Colonia Insurance Company(Axa's predecessor) is the surety. The Bond provides in pertinent part:
 Whereas, the Principal has entered into an agreement with the Town of Haddam, Ct., Obligee, guaranteeing only that the Principal will complete site improvements as per the Engineers Estimate prepared by Robert W. Tommell P.E. Town Engineer/Sanitarian dated August 9, 1994 which is attached and made part hereto, as well as certain off-site improvements. . . . at and around certain land known as Chatham Lake Subdivision. . . . all of which improvements shall be completed on or before 8/1/96 set forth in the final approval of the subdivision.
Emphasis added.
After a posting of the Bond, the developer undertook to sell lots in the subdivision. In all, fourteen lots have been sold and thirteen houses have been constructed and are occupied by families. CT Page 3723
The subdivision approvals by the Haddam Planning and Zoning Authority were to have expired in August, 1996, if all public improvements were not completed by that date. When it became clear that the public improvements would not be completed in a timely fashion, the developer applied for and received certain extensions of the permits with conditions in an effort to resolve the defaults in the completion of the construction so that the project could proceed. The Bond was also extended.
The public improvements were not completed and the conditions of the extensions were not met. Thereafter, on April 1, 1997, in accordance with Connecticut General Statutes § 8-26c(c), the Town caused a notice of expiration of subdivision approval to be recorded on the land records of the Town. Demand was made upon the bonding company to honor its surety obligation.
The developer appealed the expiration of the subdivision to this court in two separate lawsuits. The first suit was entitled Nason Group, LLCvs. Haddam Planning and Zoning Commission, Superior Court, Judicial District of Middlesex, No. CV-97-0081649S. The court dismissed that appeal. No further appellate review was sought with respect to that action. The second suit, Nason Group, LLC vs. Planning Commission of theTown of Haddam, Superior Court, Judicial District of Middlesex, No. CV 97 00820 17S, was also dismissed. The developer appealed that dismissal and the appeal was dismissed by the Supreme Court on January 27, 1999.
The developer substantially failed to complete or maintain the improvements which it made at the subdivision. Therefore, those improvements have substantially deteriorated over the course of years.
The Town has submitted evidence of many problems with the improvements which were supposed to have been made by Nason Group, LLC, which were the subject of the Bond, including the following: a) Roadways in the subdivision were opened and partially paved with a thin binder coating of material, not a final paved surface and have broken up and deteriorated substantially; b) Substantial drainage facilities are lacking including hundreds of feet of drainage pipe, many catch basins and other drainage structures are missing entirely; c) Areas adjacent to the roadways and disturbed areas have not been stabilized resulting in extensive erosion, sedimentation and siltation of streams and the clogging of those drainage facilities which were partially installed; d) A number of fire protection devices called for, including water storage tanks, hydrants and similar facilities have not been installed and, therefore, are not available for fire protection for the homes that have been built in the project; e) Substantial quantities of concrete pipe not associated with the installation of this project have been brought to the site and deposited CT Page 3724 there by the developer and abandoned; f) Earth moving equipment has been abandoned on the site and is in a derelict condition and is leaking hydraulic and other fluids creating an environmental hazard; j) Pedestrian sidewalks have not been constructed.
The Town now seeks to collect the bond proceeds and complete the project roads arid facilities to protect the interests of the home owners who live in the subdivision and interests of the public.
Discussion of Law and Ruling
Practice Book § 17-49 (formerly § 384) provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Connecticut Bank Trust Co. v. Carriage Lane Associates,219 Conn. 772, 780-81, 595 A.2d 334 (1991); Lees v. Middlesex Ins. Co.,219 Conn. 644, 650, 594 A.2d 952 (1991). Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact; D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434,429 A.2d 908 (1980); a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. Practice Book §§ 17-45; 17-46; Burns v. Hartford Hospital,192 Conn. 451, 455, 472 A.2d 1257 (1984). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Town Bank Trust Co. v. Benson,176 Conn. 304, 309, 407 A.2d 971 (1978); Strada v. ConnecticutNewspapers, Inc., 193 Conn. 313, 317, 477 A.2d 1005 (1984). The test is whether a party would be entitled to a directed verdict on the same facts. Batick v. Seymour, 186 Conn. 632, 647, 443 A.2d 471 (1982); NewMilford Savings Bank v. Roina, 38 Conn. App. 240, 243-44, 659 A.2d 1226
(1995).
Summary judgment should only be granted if the pleadings, affidavits and other proof submitted demonstrate that there is no genuine issue as to any material fact. Scinto v. Stain, 224 Conn. 524, 530, cert. denied,114 S.Ct. 176, 126 L.Ed.2d 136 (1993); Connell v. Colwell, 214 Conn. 242,246, 571 A.2d 116 (1991). Summary judgment is "designed to eliminate the delay and expense of litigating an issue where there is no real issue to be tried." Wilson v. City of New Haven, 213 Conn. 277, 279, 567 A.2d 829
(1989).
In this case both parties are moving for summary judgment, both acknowledging that there is no material issue of fact. CT Page 3725
The arguments advanced by Axa are similar to those advanced by the surety in the recent case of Southington v. Commercial Union Ins.,254 Conn. 348, ___ A.2d ___ (2000). In this case and Southington the sureties attempt to read Connecticut General Statutes § 8-26c in a manner which diminishes the Town's authority to call a performance bond obligation pursuant to Connecticut General Statutes § 8-25.
Connecticut General Statutes § 8-25 provides in pertinent part:
 No subdivision of land shall be made until a plan for such subdivision has been approved by the commission . . . No such plan shall be recorded or filed by the town clerk or district clerk or other officer authorized to record or file plans until its approval has been endorsed thereon by the chairman or secretary of the commission, and the filing or recording of a subdivision plan without such approval shall be void. Before exercising the powers granted in this section, the commission shall adopt regulations covering the subdivision of land. No such regulations shall become effective until after a public hearing . . . Such regulations may provide that in lieu of either the completion of the work or the furnishing of a bond as provided in this section, the commission may authorize the filing of a plan with a conditional approval endorsed thereon. Such approval shall be conditioned on (1) the actual construction, maintenance and installation of any improvements or utilities prescribed by the commission or (2) the provision of a bond as provided in this section. Upon the occurrence of either of such events, the commission-shall cause a final approval to be endorsed thereon in the manner provided by this section. Any such conditional approval shall lapse five years from the date it is granted, provided the applicant may apply for and the commission may, in its discretion, grant a renewal of such conditional approval for an additional period of five years at the end of any five-year period, except that the commission may, by regulation, provide for a shorter period of conditional approval or renewal of such approval. Any person, firm or corporation who, prior to such final approval, sells or offers for sale any lot subdivided pursuant to a conditional approval shall be fined not more than five hundred dollars for each lot sold or offered for sale.
CT Page 3726
Connecticut General Statutes § 8-26c provides in pertinent part:
 (a) Any person, firm or corporation making any subdivision of land, except as provided in section 8-26g. shall complete all work in connection with such subdivision within five years after the approval of the plan for such subdivision; the commission's endorsement of approval on the plan shall state the date on which such five-year period expires.
 (c) In the case of a subdivision plan approved on or after October 1, 1977, failure to complete all work within such five-year period or any extension thereof shall result in automatic expiration of the approval of such plan provided the commission shall file on the land records of the town in which such subdivision is located notice of such expiration and shall state such expiration on the subdivision plan on file in the office of the town clerk of such town . . .
 d) Notwithstanding the provisions of this section, any subdivision approval made under this section on or before October 1, 1991, shall expire not more than seven years from the date of such approval and the commission may grant one or more extensions of time to complete all or part of the work in connection with such subdivision. . . .
On September 18, 1989, the Haddam Planning Zoning Commission ("Commission") conditionally approved a plan submitted by the developer, Nason Group, LLC. Such a conditional approval is specifically allowed under § 8-25.
The Haddam Subdivision Regulations, § 2.4.4.(2) entitled "Conditional Approval" provide as follows: "Conditional approval may be granted if the Commission finds that one or more of the requirements set forth in 2.4.4.(1) Final Approval have not been met." Paragraph 2.4.4.(1) Final Approval is as follows: "Final approval shall be granted if the commission finds that the subdivision map and plans and accompanying health certificates, other certificates, documents and data conform to the requirements of these Regulations. Final approval shall be granted if all required subdivision improvements have been completed or a bond agreement has been executed to guarantee completion of such improvements as specified in Paragraph 2.4.7. and 2.4.8."
Paragraph 2.4.7.4.1 of the Haddam Regulations, "Completion of CT Page 3727 Improvements" provides: "Should an applicant not intend to post a performance bond, he may opt to construct the subdivision improvements. In this case, the Commission may endorse the Record Subdivision map granting final approval only after the applicant has submitted as-built plans and documentation showing completion of the improvements (to the satisfaction of the Commission) or after the applicant posts a performance bond covering the incomplete portion of the required subdivision improvements. . .".
That is what the developer did in this case. It received conditional approval on September 18, 1989, which meant that it did not intend to bond the improvements but it was going to do the work on the improvements prior to final approval (the time when it could begin selling lots).
August 1, 1996 was the date for completion of improvements provided in its own Bond and in the plan as endorsed by the Commission (see §8-26c(a)). Axa's principal, Nason Group, unsuccessfully challenged the Town's termination of the subdivision approval. Nevertheless, Axa takes the position that it owes nothing on the Bond because the Town could not terminate the subdivision until 1999 and, therefore, Nason Group was given insufficient time to complete the improvements. Axa also argues that the five year period for completion of a subdivision does not begin to run until the subdivision plan is filed with the town clerk. The problem with these arguments is that they have no basis in the statutory language.
In Southington the Court reviewed the rules of statutory construction:
 "When we construe a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . because the legislature is presumed to have created a consistent body of law. . . . Conway v. Wilton, 238 Conn. 653, 663-64, 680 A.2d 242 (1996). We construe each sentence, clause or phrase to have a purpose behind it. State v. Ayala, 222 Conn. 331, 346, 610 A.2d 1162 (1992). In addition, we presume that the legislature intends sensible results from the CT Page 3728 statutes it enacts. State v. Parmalee, 197 Conn. 158, 165, 496 A.2d 186 (1985).
 Therefore, we read each statute in a manner that will not thwart its intended purpose or lead to absurd results. . . . Coley v. Camden Associates, Inc., 243 Conn. 311, 319, 702 A.2d 1180 (1997)." (Internal quotation marks omitted.) Linden Condominium Assn., Inc. v. McKenna, 247 Conn. 575, 583-84, 726 A.2d 502
(1999).
254 Conn. at 357-358.
Section 8-26c does not use the term "final" approval in connection with any subdivision time limit. Certainly the legislature was familiar with that term, having used it in § 8-25. Instead § 8-26c provides that the "developer shall complete all work in connection with such subdivision within five years after the approval of the plan for such subdivision." Since the clear intent of the statute is to limit the time in which the developer can "work" on the subdivision, it is logical that whichever approval permits the work to start should be the determinative approval in connection with the five year time limit. In this case, Nason Group was permitted to start work after the conditional approval was granted in 1989. Therefore, the five year time period, or seven year time period under § 8-26c(d), started to run when that conditional approval was granted and the valid termination date, as approved by Axa in its Bond, and as endorsed on the plan pursuant to § 8-26c, was August 1, 1996.
In addition to having absolutely no support in the language of the statute, Axa's argument does not make sense. Under this interpretation a developer who provides less protection to the Town[2] by declining to post a surety bond at the time of the initial approval of the subdivision will have a longer time to complete the subdivision than a developer who provides more protection to the Town by promptly posting a surety bond.
It is § 8-25 that permits acceptance of a bond in lieu of actual performance. "The commission may also prescribe the extent to which and the manner in which streets shall be graded and improved and public utilities and services provided and, in lieu of the completion of such work and installation previous to the final approval of a plan, the Commission may accept a bond in an amount and with surety and conditions satisfactory to it securing to the municipality the actual construction, maintenance and installation of such improvements and utilities within aperiod specified in the bond . . ." Southington, supra at p. 359. (Emphasis added) "Implicit in this statutory authority to accept a bond with surety CT Page 3729 in lieu of some other form of guarantee of the subdivider's performance obligation is the notion that upon the principal's failure to carry out its obligations under the bond, the municipality, which is the obligee on the bond, may call upon the surety to carry out those obligations." Id
It is the bond, according to § 8-25, that sets the parameters of the obligation. "We conclude that the defendant having undertaken as surety to carry out, as defined in the bond, its principal's subdivision obligations, the plaintiff had the general authority to call the bond, that is, to call upon the defendant as surety for payment for the performance of those obligations." Southington, supra at 360. (Emphasis added). "We ordinarily read statutes with common sense and so as not to yield bizarre results. It would make little sense, and would yield a bizarre result, if we read the powers of the municipality to accept a bond pursuant to § 8-25 without the concomitant implied power to call the bond according to its terms. Id.
Axa's interpretation of § 8-25 and 8-26 also run contrary to the principle that:
 This question of statutory interpretation also must be resolved in light of several fundamental legal principles governing suretyship law and performance bonds. First, the general purpose of a suretyship contract is to "guard against loss in the event of the principal debtor's default." L. Simpson, Suretyship (1950) p. 2. "Suretyship by operation of law results when a third party promises a debtor to assume and pay the debt he owes to a creditor." Id., p. 32. Second, municipal bonds are construed in accordance with the general rules for written instruments. 13 E. McQuillin, Municipal Corporations (3d Ed. Rev. 1997) § 37.209, p. 526. It is axiomatic that a performance bond runs to the benefit of the obligee. "[T]he obligation of a surety is an additional assurance to the one entitled to the performance of an act that the act will be performed." Restatement, Security, p. 225 (1941). Third, "[t]he liability of sureties is to be determined by the specified conditions of the bond. . . ." 13 E. McQuillin, supra, § 37.201, p. 502. In the present case, the bond signed by the defendant as surety provided that the defendant would be bound until the improvements were completed
254 Conn. at 358, 359. CT Page 3730
Axa's argument that the Bond should have other terms or conditions read into it so as to avoid liability is contrary to the manner in which performance bonds in favor of municipalities are read. "Since the bond was furnished by the defendants, it must be interpreted most strongly against them." Greenwich Contracting Co. v. Bonwit Construction Co., 156 Conn. 123,129-30, 239 A.2d 519 (1968). "When a bond is issued to comply with a statutory condition precedent to any transaction with a public authority . . . the language of the bond . . . is to be interpreted in the light of the statute and with a view to effectuating the legislative intent."Brookfield v. Greenridge, Inc., 177 Conn. 527, 535, 418 A.2d 907 (1979). The statute authorizing a bond in lieu of actual completion of public improvements provides that the bond will be enforced according to its terms.
Axa also argues that it is not bound by the Town's termination of the subdivision even though Nason Group is bound by such termination after failing in two lawsuits challenging the validity of the termination. This is inconsistent with the nature of the rights and obligations of a surety such as Axa. Axa acknowledges that the rights and obligations of a surety are coextensive with those of its principal. See Granite Computer LeasingCorp. v. The Travelers Indemnity Co., 894 F.2d 547, 551 (2d Cir. 1990). Axa argues that Nason Group's right to complete the subdivision was wrongfully terminated. But that argument is incorrect. Nason Group has already unsuccessfully asserted that argument in two appeals.
Moreover, Axa could have appealed the Town's termination of the subdivision approval. But it did not do so. Connecticut General Statutes § 8-8 (b) provides that any person aggrieved by any decision of a board may take appeal to the superior court. "The appeal shall be commenced by service of process . . . within 15 days from the date that notice of the decision was published . . .
Aggrieved person is defined as. . . . a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality. . .". To establish aggrievement from a zoning decision, so as to have standing to challenge the decision, a person claiming to be aggrieved must demonstrate specific personal and legal interest in the subject matter of the decision. He must further establish that the specific personal and legal interest has been specifically and injuriously affected by the decision. Northeast Parking, Inc. v. Planningand Zoning Commission of The Town Of Windsor Locks, 47 Conn. App. 284,703 A.2d 797 (1997).
The Town has submitted evidence that Axa had notice of the Town's decision to terminate the subdivision approval. Axa's personal and legal CT Page 3731 interest in the subdivision would clearly give it standing to appeal as an aggrieved person. It chose not to appeal.
Moreover, the doctrine of res judicata binds Axa to the previous decisions of this court, which dismissed Nason Group's appeals of the termination of the subdivision. Based on those decisions Nason Group is barred from further claim that the termination of the subdivision was improper or illegal.
A valid, final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand.Isaac v. Truck Svc., Inc., 253 Conn. 416, 420, ___ A.2d ___ (2000);Slattery v. Maykut, 176 Conn. 147, 156-57, 405 A.2d 76 (1978). "While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel [or res judicata] is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding. . . . A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity." (Citation omitted; internal quotation marks omitted.) AetnaCasualty Surety Co. v. Jones, 220 Conn. 285, 304, 596 A.2d 414 (1991). In Aetna Casualty, supra, the Court found privity between a wrongful death claimant and a criminal defendant insured because the wrongful-death claimant's rights were only as good as the rights that of the criminal defendant under that defendant's insurance contract.220 Conn. at 305.
In this case the rights of Axa with respect to the completion period set forth in the Bond are only as good as those of Nason Group. Therefore, the doctrine of res judicata provides an alternate reason for granting the summary judgment in favor of the Town of Haddam.
For the reasons set forth above, summary judgment is granted in favor of the Town of Haddam as to liability only and denied as to Axa.
By the court
Aurigemma, J.