KENT WILLARD *v.* TRAVELERS INSURANCE
COMPANY
(SC 15870)

Borden, Berdon, Norcott, Palmer and McDonald, Js.

Argued September 23—officially released December 29, 1998

*John W. Mills*, with whom was *John H. Peck, Sr.*, for the appellant (plaintiff).

*Scott P. Myers*, with whom was *David J. Elliott*, for the appellee (defendant).

*Opinion*

BERDON, J. The principal issue in this appeal is whether collateral estoppel may be used against a party who was not permitted to intervene in a prior proceeding that resulted in a default judgment adverse to that party. We answer this question in the negative.

In 1989, the plaintiff, Kent Willard, commenced an action against John J. Brotz, Jr., for damages arising from personal injuries (personal injury action).[1] Willard alleged that Brotz assaulted him, subjected him to false imprisonment, and negligently forced him to exit a moving vehicle. In his complaint, Willard also alleged that Brotz was a resident of his parents' household on the date of the injury. At that time, Brotz' parents were the named insureds in a homeowner's liability policy (policy) issued by the defendant, Travelers Insurance Company (Travelers). This policy provided $300,000 in liability coverage for the named insureds and any relatives who were "residents of [their] household." Travelers retained an attorney to appear on behalf of

---

[1] *Willard* v. *Brotz*, Superior Court, judicial district of New Haven, Docket No. CV 89-0283774-S (February 28, 1995).

Brotz in the personal injury action. This attorney filed an answer on behalf of Brotz admitting that Brotz resided with his parents at the time of the incident with Willard.

In 1992, Travelers brought an action against Brotz seeking a declaratory judgment that Brotz was not entitled to coverage under the policy because he was not a resident of his parents' household at the time Willard was injured (declaratory judgment action).[2] While the declaratory judgment action was pending, Brotz was incarcerated in a number of different drug and alcohol treatment facilities; he never filed an appearance.

Willard moved to intervene in the declaratory judgment action as a necessary party defendant. Travelers objected, arguing that Willard possessed "no existing, direct legal or equitable 'interest' in the subject matter of [the] declaratory judgment action . . . ." The trial court, *Walsh, J.*, denied Willard's motion to intervene; Willard did not appeal.

Thereafter, Travelers obtained a default against Brotz for failure to appear in the declaratory judgment action. Travelers moved for judgment on the default, on the ground that Brotz was not an insured under the policy and that Travelers, therefore, was not obligated to defend Brotz in the personal injury action. The court granted the motion and, accordingly, rendered a declaratory judgment against Brotz.

After judgment was rendered in the declaratory judgment action, Travelers instructed its attorney to withdraw his appearance on behalf of Brotz in the personal injury action brought by Willard. On February 28, 1995—after Brotz had been defaulted for failure to appear—judgment was rendered against Brotz in the

---

[2] *Travelers Ins. Co.* v. *Brotz*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 92-0511016-S (December 12, 1992).

amount of $105,695.[3] Willard brought the present action against Travelers pursuant to General Statutes § 38a-321 (direct action)[4] in order to satisfy the judgment in the personal injury action, which Travelers refused to do.[5]

Travelers moved for summary judgment on two grounds: (1) as a result of the default judgment obtained against Brotz in the declaratory judgment action, Willard was collaterally estopped from relitigating the issue of Brotz' coverage under the policy and (2) even if not collaterally estopped, Willard was not entitled to recover from Travelers because Brotz was not a resident of his parents' home at the time of the incident

---

[3] Willard withdrew his intentional assault and false imprisonment claims against Brotz. Accordingly, the default judgment was limited to the negligence claims.

[4] General Statutes § 38a-321 provides: "Liability of insurer under liability policy. Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty. No such contract of insurance shall be cancelled or annulled by any agreement between the insurance company and the assured after the assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void. Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

[5] In the direct action, Willard also sought damages from Travelers for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Connecticut Unfair Insurance Practices Act, violation of the Connecticut Unfair Trade Practices Act, and third party breach of contract.

and thus was not an insured under the policy issued by Travelers. The trial court, *Gray, J.*, denied both this motion for summary judgment and a subsequent motion to reargue. Shortly before the court trial was scheduled to commence before a different judge, Travelers filed a motion in limine that sought for a third time to apply the doctrine of collateral estoppel to bar Willard's direct action. The trial court, *Hon. Anthony V. DeMayo*, judge trial referee, granted the motion in limine and, consequently, rendered judgment in favor of Travelers. Willard appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1, formerly § 4023, and General Statutes § 51-199 (c). We reverse the trial court's judgment.

## I

By arguing that collateral estoppel bars the plaintiff's direct action suit, Travelers urges us to disregard the fact that Willard neither litigated any issue in the declaratory judgment action nor was permitted to do so. Travelers reasons as follows: "Because Willard's rights [under the direct action statute] derive exclusively and entirely from Brotz' rights in the [policy], a judgment declaring that Brotz was not an insured under the [policy] is also binding on Willard." In other words, Travelers claims that Willard should be estopped because he is in privity with Brotz.

We recently discussed collateral estoppel in the context of the direct action statute in *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 596 A.2d 414 (1991), which involved the following facts. Russell F. Manfredi was accused of killing his wife. Following a criminal trial, Manfredi was convicted of first degree manslaughter. In order to reach this verdict, the jury necessarily had to conclude beyond a reasonable doubt that Manfredi intended to kill his wife.[6] In a civil action brought

---

[6] General Statutes § 53a-55 (a) (2) provides in pertinent part: "A person is guilty of manslaughter in the first degree when . . . *with intent to cause*

by Margaret Billings Jones—the administratrix of the wife's estate—Manfredi was found liable for the wrongful death of his wife. After the close of the criminal trial, Manfredi's insurer—Aetna Casualty and Surety Company (Aetna)—brought a declaratory judgment action against Jones to determine its liability to her for this civil judgment. Aetna claimed that the jury's finding of intent in the criminal trial absolved it of any liability under Manfredi's insurance policy, which covered only negligent acts. For reasons discussed more fully below, we concluded that Jones was collaterally estopped from relitigating the issue of intent. Willard argues that the facts of the present case differ so fundamentally from those involved in *Jones* that we should reach the opposite result in this case and decline to apply principles of collateral estoppel. We agree.[7]

We explained in *Jones* that "[c]ollateral estoppel may be invoked against a party to a prior adverse proceeding or against those in privity with that party. *State* v. *Fritz*, 204 Conn. 156, 172, 527 A.2d 1157 (1987); *P. X. Restaurant, Inc.* v. *Windsor*, 189 Conn. 153, 161, 454 A.2d 1258 (1983); *State* v. *Wilson*, 180 Conn. 481, 486, 429 A.2d 931 (1980). While it is commonly recognized that privity is difficult to define, the concept exists 'to ensure that the interests of the party against whom collateral estoppel is being asserted have been *adequately represented* because of his purported privity with a party at the initial proceeding.' *State* v. *Fritz*, supra, 173." (Emphasis added.) *Aetna Casualty & Surety Co.* v. *Jones*, supra, 220 Conn. 303–304.

In this case, the most that Travelers can claim is that "Brotz was *situated* to protect Willard's" interest.

the death of another person, he causes the death of such person . . . ." (Emphasis added.)

[7] Because we conclude that the court, *DeMayo, J.*, should have rejected Travelers' claim of collateral estoppel, we need not address whether a motion in limine was the appropriate procedural mechanism by which to raise the issue.

(Emphasis added.) Travelers does not—and could not—maintain that Brotz or anyone else did *in fact* protect Willard's interests. It is of no moment that, as Travelers argues, "if Brotz has no rights in the [policy], then neither does Willard." While this statement is technically accurate, it entirely misses the mark. The dispositive question is not what happens once Brotz' coverage has been conclusively established but, rather, whether the declaratory judgment action conclusively established Brotz' coverage for purposes of Willard's direct action suit. It is this latter question that we answer in the negative.

In *Jones*, we determined that, pursuant to the direct action statute, "the rights of the estate [were] entirely dependent upon and limited by the rights of Manfredi." *Aetna Casualty & Surety Co.* v. *Jones*, supra, 220 Conn. 306. Accordingly, we concluded that Jones and Manfredi were in privity with one another. That, however, was merely the beginning of our analysis. In the very next paragraph, we explained that, "where there is a lack of mutuality [of parties] or the doctrine of privity is raised, the court must make certain that there was a full and fair opportunity to litigate. The requirement of full and fair litigation ensures fairness, which is a 'crowning consideration' in collateral estoppel cases." Id. In the present case, considerations of equity bar the invocation of collateral estoppel. We address several of these considerations seriatim.

It is well established that "[c]ollateral estoppel . . . prohibits the relitigation of an issue when that issue was *actually litigated* . . . in a prior action . . . . *In re Juvenile Appeal (83-DE)*, 190 Conn. 310, 316, 460 A.2d 1277 (1983). For an issue to be subject to collateral estoppel, it must have been *fully and fairly litigated* in the first action. . . . *Virgo* v. *Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988); see also *Ashe* v. *Swenson*, 397 U.S. 436, 445, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970);

*State* v. *Hope*, 215 Conn. 570, 584, 577 A.2d 1000 (1990), cert. denied, 498 U.S. 1089, 111 S. Ct. 968, 112 L. Ed. 2d 1054 (1991)." (Emphasis altered; internal quotation marks omitted.) *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 714, 627 A.2d 374 (1993). In the final sentence of *Jones*, we drove this point home by explaining that it was fair to bar Jones from relitigating the issue of intent because "[t]here [was] no question that the issue . . . was *thoroughly litigated* in a full adversary proceeding." (Emphasis added.) *Aetna Casualty & Surety Co.* v. *Jones*, supra, 220 Conn. 307.

There was no prior litigation in the present case, let alone litigation that could be characterized as actual, full, fair or thorough. Instead, the declaratory judgment was obtained by default, without so much as either an appearance by counsel for Brotz or a hearing on the merits. This contrast marks a profound difference between *Jones* and the present case. In *Jones*, "Manfredi was provided with the full range of constitutional protections available to criminal defendants, including the right to a jury of twelve and the right to require the state to prove him guilty beyond a reasonable doubt." Id. None of these safeguards was present in the declaratory judgment action against Brotz.[8]

Furthermore, we expressly reserved in *Jones* the possibility that "the case may arise where a lack of mutuality of parties would render the use of collateral estoppel patently unfair . . . ." Id., 303. This is such a case. Travelers successfully thwarted Willard's attempt to intervene in the declaratory judgment proceeding against Brotz by arguing that Willard possessed "no

---

[8] Although we have recognized that it is possible to "envision some circumstances where it would be appropriate to give issue preclusive effect to a default judgment"; *Jackson* v. *R. G. Whipple, Inc.*, supra, 225 Conn. 717; nothing about the present case suggests the propriety of applying the principles of collateral estoppel in order to bar Willard's direct action against Travelers.

existing, direct[,] legal or equitable 'interest' in the subject matter of [that] action . . . ." For this reason, Willard did not possess even the *opportunity* to litigate the issue of Brotz' residence. Travelers cannot now be heard to argue that Brotz and Willard are so interchangeable that we should bind the latter to a default judgment rendered against the former.

In *Jones*, we also expressed our concern that a litigant in the prior proceeding "might not be sufficiently motivated to challenge the allegations . . . ." Id., 306; *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 819, 695 A.2d 1010 (1997) (finding "little or no incentive in litigating" prior proceeding). We emphasized in *Jones* that "Manfredi was accused of murdering his wife. If convicted, he faced a potential sentence of life imprisonment." *Aetna Casualty & Surety Co.* v. *Jones*, supra, 220 Conn. 306. Accordingly, we concluded that "his motivation to prove a lack of intent was compelling." Id., 306–307. In the present case, in contrast, there is a substantial question as to whether Brotz understood the consequences of the declaratory judgment action. According to his deposition, Brotz was undergoing detoxification and withdrawal in a rehabilitation facility at the time of the prior proceeding. In addition, his father, who worked in the insurance industry, apparently counseled him not to worry about his attorney's motion to withdraw from the declaratory judgment action. Even if Brotz did comprehend the import of the proceedings, his probable lack of assets provided him little incentive to vigorously contest the coverage of the policy.[9]

---

[9] We are not persuaded by Travelers' claim that it would be "neither unfair nor inequitable" to estop Willard, because he should have either appealed the denial of his motion to intervene in the declaratory judgment action or moved to open the default judgment rendered against Brotz. As we have already emphasized, fairness is the " 'crowning consideration' " in collateral estoppel cases. *Aetna Casualty & Surety Co.* v. *Jones*, supra, 220 Conn. 306. We conclude that the unfairness of Travelers' opposition to Willard's motion to intervene—in particular, its argument that Willard possessed no interest in the subject matter of the declaratory judgment action—eclipses

We conclude, therefore, that Willard is not collaterally estopped by the declaratory judgment action brought by Travelers and, accordingly, he may relitigate the issue of Brotz' coverage under his parents' policy.

## II

Travelers' final claim is that, in the alternative, the trial court, *Gray, J.*, incorrectly denied its motion for summary judgment on the basis of Travelers' argument that, as a matter of law, Brotz was not an insured under the policy because he did not reside with his parents at the time he injured Willard. We are not persuaded.

In order to prevail, Travelers would have to demonstrate that, even when the evidence is viewed in the light most favorable to Willard, there was no genuine issue as to residence. *Water & Way Properties* v. *Colt's Mfg. Co.*, 230 Conn. 660, 664, 646 A.2d 143 (1994); *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 106, 639 A.2d 507 (1994). In his lengthy memorandum opposing Travelers' motion for summary judgment, Willard marshaled the following evidence that, at the very least, suggests a genuine issue of material fact that Brotz resided in his parents' household at the time Willard was injured: (1) in his answer to the complaint filed by Willard in the underlying personal injury action, Brotz admitted that he resided in his parents' home and (2) in an affidavit, Brotz' father stated that Brotz stored personal property there. Indeed, Travelers used Brotz' parents' home

any possible inequity that might otherwise inhere in Willard's failure to avail himself of either a prior appeal or a motion to open.

Moreover, Travelers has made no attempt to establish that Willard (1) could have appealed from the denial of his motion to intervene; see *Common Condominium Assns., Inc.* v. *Common Associates*, 5 Conn. App. 288, 291, 497 A.2d 780 (1985) ("an unsuccessful applicant for intervention in the trial court does not have a final judgment from which to appeal unless he can make a colorable claim to intervention *as a matter of right*" [emphasis added]); or (2) would have prevailed on either this appeal or on a motion to open. Under the circumstances of this case, we fail to see how an unsuccessful appeal or motion to open could possibly trigger the doctrine of collateral estoppel.

as his address when it notified him that he was being sued in the underlying personal injury action. Accordingly, we reject Travelers' claim that, as a matter of law, Brotz was not a resident of his parents' home at the time of the incident, notwithstanding the affidavit of Brotz' parents that he was not living with them at the time of Willard's injury. In other words, we conclude that there appears to be a genuine issue of material fact.

The judgment is reversed and the case is remanded to the trial court with direction to deny the defendant's motion in limine and for further proceedings according to law.

In this opinion the other justices concurred.