Ellen M. PECK, Plaintiff,

v.

**PUBLIC SERVICE MUTUAL INSURANCE COMPANY,**
Defendant.

No. 3:99CV886 (GLG).

United States District Court,
D. Connecticut.

Aug. 31, 2000.

Thomas C. Clark, Tyler Cooper & Alcorn, Hartford, CT, John W. Mills, Murphy & Karpie, Bridgeport, CT, for plaintiff.

Thomas C. Clark, David Alan Lammey, Tyler Cooper & Alcorn, Hartford, CT, Geoffrey Naab, LaBelle, LaBelle, Naab & Horvath, Manchester, CT, Oliver B. Dickens, Jr., Simsbury, CT, for defendants.

### MEMORANDUM DECISION

GOETTEL, District Judge.

Pending before the Court is Defendant's Renewed Motion to Dismiss Counts Two, Three, and Four of Plaintiff's Revised Complaint [**Doc. # 26**]. Following oral argument and after consideration of the moving papers and opposition, the Court DENIES the Motion to Dismiss.

#### Background

This case is brought by plaintiff as a judgment creditor, subrogee, and assignee of South Norwalk Redevelopment Limited Partnership, an insured under a commercial general liability insurance policy issued by defendant Public Service Mutual Insurance Company. The policy was issued effective December 1, 1994, to Rattlesnake Ventures, Inc., the owner and operator of the Rattlesnake Bar & Grill in South Norwalk, Connecticut. South Norwalk Redevelopment owned the building in which the restaurant was located and was listed on the policy as an "additional insured." Plaintiff owned and resided in a condominium unit above the restaurant.

In June, 1994, plaintiff filed suit in state court alleging that since October, 1992, her condominium had been rendered uninhabitable by the loud noises and vibrations from the live bands that entertained nightly at the Rattlesnake Bar & Grill. Plaintiff named as defendants Rattlesnake Ventures, Inc., the individual manager of the restaurant, and South Norwalk Redevelopment, the owner of the building and lessor to Rattlesnake. Her claim against South Norwalk Redevelopment was essentially that, as owner of the property, it was negligent in failing to evict its tenant for violating the lease, which prohibited loud noise and disruptive conduct. Plaintiff's complaint alleged "injuries on an ongoing, regular basis since October, 1992." At the time this complaint was filed, Public Service Mutual's policy insuring South Norwalk Redevelopment had not been issued.[1] In June, 1998, plaintiff filed an amended complaint which contained the same allegations of ongoing injuries since October, 1992. Plaintiff maintains that this is the operative complaint, which, according to plaintiff, clearly alleged injuries occurring during the period covered by defendant's policy. Defendant claims that it never received a copy of this complaint.

On December 4, 1998, plaintiff obtained a judgment in state court against South

---

1. Plaintiff takes that position that once the policy was issued, there was coverage because her complaint alleged ongoing injuries continuing into the future. We were advised at oral argument that South Norwalk Redevelopment was represented in the state court action by defense counsel hired by a prior carrier (who had filed an appearance on behalf of all the defendants). Public Service Mutual did not get notice of this suit until the fall of 1995 when defense counsel asked Public Service Mutual to provide a defense for Rattlesnake Bar & Grill. No request was made at that time for Public Service Mutual to provide a defense for South Norwalk Redevelopment. Plaintiff maintains that once Public Service Mutual received a copy of the complaint, it was put on notice that a claim was being made against its insured, South Norwalk Redevelopment, even though there was no specific request to defend South Norwalk. Although ultimately the coverage issue will be the critical question in this case, that question is not before us at this time. Defendant has challenged only what it characterizes as the "extracontractual" claims.

Norwalk Redevelopment for $250,000 plus post-trial interest. South Norwalk Redevelopment has not satisfied the judgment and has assigned to plaintiff all of its rights under the Public Service Mutual insurance policy. Public Service Mutual has likewise refused to satisfy the judgment.

Pursuant to Connecticut's direct action statute, C.G.S.A. § 38a–321,[2] and the written assignment from South Norwalk Redevelopment, plaintiff has asserted the following five counts against Public Service Mutual: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing as a result of Public Service Mutual's "wrongful refusal" to provide South Norwalk with either a legal defense and/or indemnification in connection with the underlying action; (3) violation of Connecticut's Unfair Insurance Practices Act ("CUIPA"), C.G.S.A. § 38a–815, by wrongfully refusing to provide its insureds with a legal defense, by wrongfully refusing to indemnify its insureds for a judgment covered by the policy, and by failing to offer reasonable settlements; (4) violation of Connecticut's Unfair Trade Practices Act ("CUTPA"), C.G.S.A. § 42–110b, by failing to deal fairly and in good faith with its insureds; and (5) third-party breach of contract. Only counts two, three and four are the subject of the instant motion to dismiss.

### Discussion

Pursuant to Rule 12(b)(6), Fed.R.Civ.P., defendant has moved to dismiss plaintiff's claims for breach of the implied covenant of good faith and fair dealing and for violation of CUIPA and CUTPA for failure to state a claim upon which relief may be granted. For purposes of this motion, this Court is bound by the allegations on the face of the complaint,[3] which the Court must accept as true. Additionally, the Court must liberally construe plaintiff's allegations and draw all reasonable inferences in plaintiff's favor. When considering a motion to dismiss for failure to state a claim upon which relief may be granted, a Court should not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts consistent with the pleadings which would entitle him or her to relief. *H.J. Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Williams v. Vincent*, 508 F.2d 541, 543 (2d Cir.1974).

### 1. Whether Connecticut's Direct Action Statute Precludes Plaintiff's Bad Faith, CUIPA and CUTPA Claims

Defendant initially argues that plaintiff's claims for bad faith and for violation of CUIPA and CUTPA must be dismissed because plaintiff's only "proper" claim is pursuant to Connecticut's direct action statute, C.G.S.A. § 38a–321.

In this case, all of plaintiff's claims have been brought by her as the judgment creditor, assignee, and subrogee of South Norwalk pursuant to the provisions of the direct action statute and the terms of the

---

2. Connecticut's direct action statute provides in relevant part:

Upon the recovery of a final judgment against any person, firm or corporation by any person ... for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such

action could have enforced his claim against such insurer had such defendant paid such judgment.

3. Because plaintiff's claims are predicated on the Public Service Mutual's insurance policy issued to South Norwalk Redevelopment, which defendant has submitted to the Court, the Court may consider the policy in connection with the motion to dismiss without converting it to a motion for summary judgment. *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).

written assignment from South Norwalk Redevelopment. (Rev.Compl. ¶ 12, incorporated by reference into all counts). It is not just plaintiff's breach of contract claims that have been brought pursuant to the direct action statute, as defendant seems to suggest. Thus, the question before us is not whether the direct action statute was the only "proper" means for plaintiff to assert a claim against Public Service Mutual but, rather, whether plaintiff may assert these "extracontractual" claims (as defendant characterizes them) in an action under the direct action statute.

Connecticut's direct action statute, C.G.S.A. § 38a–321 (formerly § 38–175), provides that once a final judgment is rendered against an insured for loss or damage covered by a policy of insurance and the judgment remains unsatisfied for more than 30 days, the "judgment creditor shall be subrogated to *all the rights* of the defendant and shall have a right of action against such insurer *to the same extent* that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment." (Emphasis added). In *Brown v. Employer's Reinsurance Corp.*, 206 Conn. 668, 672, 539 A.2d 138 (1988), the Connecticut Supreme Court discussed the underlying purpose of the direct action statute, stating that the legislature's intent in enacting the statute was to give the injured person the same rights under the policy as the insured. The statute protects those injured by judgment-proof insureds by subrogating the injured party or judgment creditor to the rights of the insured against his insurer. *Id.* The Court held that a party subrogated to the rights of an insured under the direct action statute obtains no different or greater rights against the insurer than the insured possesses and is equally subject to any defense the insurer may have against the insured under the policy. *Id.* at 673, 539 A.2d 138. Consequently, the Court held that in order for a party to proceed under the direct action statute, "the insured must have had a via-ble *statutory or contractual* claim against the insurer." *Id.* (emphasis added).

Significantly, for purposes of the motion now before us, the Connecticut Supreme Court in *Brown* did not limit application of the direct action statute to contractual claims under the insurance policy but also included statutory claims. Although we have found no Connecticut cases specifically addressing whether a plaintiff/judgment creditor can assert a CUIPA, CUTPA, or bad faith claim against an insurer under the direct action statute, we have found no case prohibiting such claims (and defendant has cited none), and the language cited in *Brown* would seem to permit such claims. Moreover, we note that such claims have been asserted in a number of Connecticut state court cases brought under the direct action statute. *See Willard v. Travelers Insurance Co.*, 247 Conn. 331, 334 n. 5, 721 A.2d 894 (1998) (noting that, in the direct action, the plaintiff also sought damages from Travelers for breach of contract, breach of implied covenant of good faith and fair dealing, violation of CUIPA, violation of CUTPA, and third-party breach of contract); *Black v. Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 150–51 n. 10, 681 A.2d 293 (1996) (a direct action case in which the plaintiff's claims for negligence and bad faith against the insurer went to the jury, along with his breach of contract claim); *Cage v. Litchfield Mutual Fire Insurance Co.*, No. 536847, 1996 WL 383371 (Conn.Super. May 14, 1996) (a direct action suit against the tortfeasor's insurer for CUIPA and CUTPA violations as well as bad faith, although the CUIPA and CUTPA claims were dismissed on other grounds); *Pacheco v. Allstate Insurance Co.*, No. CV 94 541707, 1995 WL 127895 (Conn.Super. Mar.9, 1995) (a direct action suit alleging CUTPA violation, although the CUTPA claim was dismissed on other grounds); *McNair v.Liberty Mutual Insurance Co.*, No. 27 10 87, 1991 WL 61318 (Conn.Super. Apr.11, 1991) (a direct action case asserting CUTPA and CUIPA violations); *see also Loftis v. Amica Mutual Insurance*

*Co.,* 175 F.R.D. 5 (D.Conn.1997) (a bad faith suit under the direct action statute by a judgment creditor against the tortfeasor's insurer for failure to make prompt settlement of her claim once liability was established); *Mazziotti v. Allstate Insurance Co.,* 240 Conn. 799, 820, 695 A.2d 1010 (1997) (noting settlement of a direct action suit for CUIPA and CUTPA violations by the insurance company).

Accordingly, we hold that plaintiff's claims for bad faith and violation of CUTPA and CUIPA may be brought under the direct action statute.

2. *Whether the Policy's Non–Assignment Clause Bars Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing*

■ Defendant next argues that plaintiff may not bring a claim for breach of an implied covenant of good faith and fair dealing which arises out of a contract to which she was not a party. Plaintiff counters that, by virtue of the assignment she obtained from South Norwalk Redevelopment, she may assert any claim that South Norwalk Redevelopment could have asserted as a party to the insurance contract. Defendant responds that South Norwalk Redevelopment's assignment to plaintiff was void because it was in direct violation of the policy's non-assignment clause.[4] To this argument, plaintiff replies that defendant cannot rely on the non-assignment clause in the insurance contract because it breached the insurance contract by refusing to defend and provide coverage for its insured, South Norwalk Redevelopment, citing *Black v. Goodwin, Loomis & Britton,* 239 Conn. at 156, 681 A.2d 293 (holding that "[a]n insurer may not hide behind

the language of the policy after the insurer abandons its insured...."). Moreover, plaintiff asserts that the assignment does not materially alter the obligations of the insurer because plaintiff has merely stepped into the shoes of the insured.

In support of its assertion that a party who is a stranger to an insurance contract cannot bring an action against the insurer for bad faith, defendant has cited a number of Connecticut State Court cases.[5] All of these cases, however, involve third-party claims brought against the insurer *prior to judgment without the benefit of the direct action statute.* Had the plaintiff attempted to sue Public Service Mutual before she obtained a judgment against the insured, the direct action statute would not have been available to her and these cases might have been relevant. However, having obtained a judgment against South Norwalk Redevelopment, plaintiff now has the benefit of the direct action statute which invests in her the same rights as the insured had against its insurer.

Plaintiff maintains that these rights are bolstered even further by the written assignment she received from the insured, to which defendant responds that this assignment is void because of the policy's non-assignment provision. Based on plaintiff's ability to bring this action pursuant to the direct action statute, it appears that the assignment from South Norwalk Redevelopment was superfluous. In *Black v. Goodwin, Loomis & Britton, Inc.* 239 Conn. at 156 n. 13, 681 A.2d 293, the Connecticut Supreme Court noted that the plaintiff's claims under the direct action statute did not depend on the assignment of rights from the insured because under the direct action statute the insurer is liable whether

4. Paragraph F of the Common Policy Conditions provided:

   Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured....

5. *See, e.g., Banatoski v. Sheridan,* No. CV 970483809S, 1998 WL 764493 (Conn.Super. Sept.17, 1998) (holding that third-party claim-

ant's lack of contractual relationship with the tortfeasor's insurer rendered her bad faith claim legally insufficient); *Martin v. Marino,* No. CV 960566135, 1997 WL 187168 (Conn.Super. Apr.10, 1997) (claimant's suit against tortfeasor's insurer for bad faith and unfair settlement practices under CUIPA barred because claimant did not have a contractual relationship with the insurer).

its contract is one of liability or indemnity. *See* C.G.S.A. § 38a–321 (insurer is absolutely liable whenever there is a loss under the policy and "payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty"). Thus, the assignment from South Norwalk Redevelopment was unnecessary, for plaintiff could have asserted these claims against defendant under the direct action statute. We have found no authority holding that this statutory right could be defeated by a non-assignment clause in a policy to which the judgment creditor was not a party. Indeed, to allow a non-assignment clause to defeat the judgment creditor's ability to pursue his or her claims against the insurer would defeat the underlying purpose of the direct action statute.

■ Moreover, the non-assignment clause in this case cannot be applied to prohibit assignments after the loss has occurred and a judgment has been obtained against the insured. The non-assignment provision applied only to a "transfer of rights and duties under the policy." (Common Policy Conditions ¶ F). Although there is some authority to the contrary, the great majority of courts have held that general stipulations in policies prohibiting assignments apply only to assignments before a loss, and do not prevent an assignment after a loss has occurred. 3 *Couch on Insurance* § 35.7 (3d ed.1999) (citing cases); *see, e.g., Antal's Restaurant, Inc. v. Lumbermen's Mutual Casualty Co.,* 680 A.2d 1386 (D.C.App. 1996) (citing cases and treatises and adhering to the "great weight of authority" that upholds an anti-assignment provision only before a loss occurs). The rationale underlying these decisions is that the non-assignment clause ordinarily prohibits only the assignment of the policy, as distinguished from a claim arising thereunder. An assignment before a loss involves a transfer of a contractual relationship, whereas an assignment after a loss is the

transfer of a right to a money claim. 3 *Couch* § 35.7. Additionally, the purpose of a non-assignment clause is to protect the insurer from increased liability, and after events giving rise to the insurer's liability have occurred, the insurer's risk cannot be increased by a change in the insured's identity. *Id.; see Lexington Insurance Co. v. Simkins Industries, Inc.,* 704 So.2d 1384 (Fla.1998) (holding that the purpose of a non-assignment clause was to protect the insurer against unbargained for risks).

Contrary to defendant's claim that the assignment would materially change the insurer's duties and risks due to the complicated "tripartite relationship between the insurer, the insured, and defense counsel," the assignment by South Norwalk Redevelopment to plaintiff after judgment in no way increased the insurer's risks or obligations. This is not a situation where an injured party is attempting to sue an insurer for bad faith while the underlying action is presently being defended by counsel reporting to the insurance company. As a judgment creditor and subrogee, plaintiff has merely stepped into the shoes of the insured and is subject to the same defenses that the insurer would have against the insured. *See Brown v. Employer's Reinsurance,* 206 Conn. at 673, 539 A.2d 138 (holding that a party subrogated to the rights of an insured under the direct action statute obtains no different or greater rights against the insurer than possessed by the insured and is subject to any defense the insurer may have against the insured under the policy); *see also Aetna Casualty & Surety Co. v. Jones,* 220 Conn. 285, 305–06, 596 A.2d 414 (1991) (holding that the direct action statute specifically grants to the judgment creditor/subrogee a right identical to the insured to recover on the insurance policy. The judgment creditor's rights are entirely dependent upon and limited by the rights of the insured. Therefore, the court concluded that the judgment creditor and insured shared a legal interest and were in privity). Therefore, to allow plaintiff, rather than the insured, to pursue these

claims against the insurer does not increase the insurer's "bargained for" risks.

Accordingly, we find that plaintiff's ability to pursue her claim for breach of the implied covenant of good faith and fair dealing was not defeated by the non-assignment clause, and defendant's motion to dismiss count two is denied.

### 3. Whether Plaintiff Can Recover under CUIPA or CUTPA

Defendant next asks us to dismiss plaintiff's CUIPA claim because there is no private right of action under CUIPA. Additionally, defendant asserts that, in insurance-related matters, a plaintiff cannot bring a CUTPA claim unless she can prove a violation of CUIPA, and since the plaintiff cannot bring an action under CUIPA, her CUTPA claim is also barred.

CUIPA forbids any person engaged in the business of insurance in the State of Connecticut from engaging in any unfair or deceptive act or practice prohibited by the statute. C.G.S.A. § 38a–815. One of the prohibited practices is "unfair claim settlement practices," C.G.S.A. § 38a–816(6), which include refusing to pay claims without a reasonable investigation and not attempting in good faith to effectuate prompt, fair and equitable settlements. *See Mead v. Burns,* 199 Conn. 651, 657, 509 A.2d 11 (1986).

In her complaint, plaintiff has alleged that defendant's "failure to deal fairly and in good faith with South Norwalk Redevelopment is part of a regular business practice" which violates CUIPA. (Rev.Compl., Ct.III, ¶ 15). Plaintiff more specifically asserts that defendant, as part of its normal business practices, has regularly engaged in wrongfully refusing to provide its insureds with a legal defense to claims that appear on their face to be within the scope of coverage; in wrongfully refusing to indemnify its insureds for judgments covered by the terms of their policies; and in failing to offer settlements to protect the personal assets and interests of its insureds. *Id.* In her fourth count, plaintiff alleges that defendant's failure to deal fairly and in good faith with South Norwalk Redevelopment, as outlined above, was part of a regular course of business conduct which includes unfair and deceptive acts, in violation of CUTPA. (Rev.Compl., Ct.IV, ¶ 16).

The parties agree that plaintiff's claims under CUIPA and CUTPA must be read together, since her CUTPA claim is premised upon the same alleged misconduct as her CUIPA claim. Although they disagree as to whether plaintiff can bring a private cause of action under CUIPA—an issue on which they concede there is a split of authority among the Connecticut Superior courts [6] and one that has not been addressed by the Connecticut Supreme Court [7]—plaintiff does concede that if she cannot allege a violation of CUIPA, her CUTPA claim must also fail. *See Lees v. Middlesex Ins. Co.,* 229 Conn. 842, 847 n. 4, 643 A.2d 1282 (1994). Therefore, for purposes of this motion to dismiss, we will treat plaintiff's CUIPA and CUTPA claims together and need not speculate on whether the Connecticut Supreme Court would recognize a private cause of action under CUIPA. *See Id.* at 850–51, 643 A.2d 1282 (holding that, where plaintiff's CUTPA claim was premised on the same alleged unfair claims settlement practices as her

**6.** *Compare Hennessey v. Travelers Property Casualty Insurance Co.,* No. CV 980332786S, 1999 WL 240231 (Conn.Super. Apr.14, 1999) (recognizing the split of authority but finding more persuasive the cases holding no private cause of action under CUIPA), *with Edelman v. Pacific Employers Insurance Co.,* No. CV 93 0533463, 1994 WL 590632 (Conn.Super. Oct.20, 1994) (citing cases and following the line of cases allowing a private cause of action under CUIPA).

**7.** In *Lees v. Middlesex Insurance Co.,* 229 Conn. 842, 847 n. 4, 643 A.2d 1282 (1994), the Connecticut Supreme Court specifically declined to consider the question of whether CUIPA creates a private cause of action because a ruling on that issue was not necessary to its decision in that case.

CUIPA count, plaintiff's CUTPA claim could not survive the failure of her CUIPA claim); *see also Pacheco v. Allstate Insurance Co., supra,* (holding that, where the alleged misconduct is related to the insurance industry, a plaintiff may not bring a claim under CUTPA based upon conduct that does not violate CUIPA).

■ Defendant argues that plaintiff cannot sue under CUTPA because she cannot prove a violation of CUIPA. In *Mead v. Burns,* 199 Conn. at 663, 509 A.2d 11, the Supreme Court sanctioned a CUTPA claim predicated on a violation of CUIPA, and held that under both statutory schemes plaintiff must prove a general course of conduct—more than an isolated act of insurance misconduct. *Id.* at 659 & 666, 509 A.2d 11; *Lees v. Middlesex Insurance Co.,* 229 Conn. at 849, 643 A.2d 1282 (holding that defendant's mishandling of a single insurance claim—even where several unfair settlement practices were alleged with respect to that one claim—without any evidence of misconduct by the defendant in the processing of other claims, did not rise to the level of a "general business practice" as required by CUIPA). Although plaintiff ultimately may not be able to prove a "general business practice" by defendant in violation of CUIPA, that issue is not before us on this motion to dismiss. Plaintiff's allegations that defendant has "regularly been engaged, as part of its normal business practices," in wrongfully refusing to provide its insureds a legal defense for covered claims, in wrongfully refusing to indemnify its insureds for judgments entered against them for covered claims, and in failing to offer reasonable settlements, are sufficient to survive a motion to dismiss. *See Walker v. Allstate Indemnity Co.,* No. CV 0357641S, 2000 WL 726356 (Conn.Super. May 16, 2000).

■ Defendant further argues that plaintiff cannot recover in her own right under either CUTPA or CUIPA. As discussed above, plaintiff's claims are brought under the direct action statute and, as a subrogee of the insured, she has stepped into its shoes. Although we have found no case specifically addressing the question of whether a judgment creditor may assert a CUIPA or CUTPA claim under the direct action statute, there are numerous cases in which such claims have been asserted, and, as we noted, the Court in *Brown v. Employer's Reinsurance, supra,* spoke in terms of "statutory" claims of the insured against the insurer. Moreover, in *Mead v. Burns,* 199 Conn. at 657, 509 A.2d 11, although the Court specifically refused to decide the question of who is authorized to enforce violations of CUIPA, the Court strongly suggested that it would have allowed plaintiff's direct action claim under CUTPA had plaintiff properly alleged a violation of CUIPA. *See Id.* at 661–66, 509 A.2d 11. Therefore, absent any authority to the contrary, we find that plaintiff can bring a CUTPA claim based upon a CUIPA violation under the direct action statute even though plaintiff was not a party to the insurance contract with the insurer.

■ Finally, defendant argues that plaintiff cannot assert a "vicarious" claim under CUTPA because she has suffered no "ascertainable loss" of money or property. Again, defendant ignores the fact that plaintiff's CUTPA claim is brought as a subrogee of the insured under the direct action statute. Further, plaintiff herself has suffered a loss, for she has an unpaid judgment for which defendant may or may not be liable. This is sufficient to meet the "ascertainable loss" requirement of CUTPA. *See Three Deer Associates v. Yankee Gas Service Co.,* No. CV 94–0246450, 1995 WL 263936 (Conn.Super. May 1, 1995). Therefore, defendant's motion to dismiss counts three and four is denied at this time without prejudice to renewal on summary judgment.

## CONCLUSION

For the reasons set forth above, Defendant's Renewed Motion to Dismiss Counts

Two, Three, and Four of Plaintiff's Revised Complaint [**Doc. # 26**] is DENIED.

SO ORDERED.