[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
The plaintiff, B.K., is a minor student with a learning disability.[1]
He has at all relevant times been enrolled in the Norwalk Board of Education school system. The Norwalk Board of Education (Board) is responsible for providing the plaintiff with appropriate special educational services under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq.
On July 23, 1998, the plaintiff filed a complaint against the Board and Elda Kluth, the special education and student services director of the Board. The complaint alleges three counts consisting of a claim for attorney's fees and costs pursuant to § 1415 of the IDEA; a claim against the Board pursuant to § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and a claim of intentional infliction of emotional distress against Kluth.
The first count of the complaint alleges the following. Prior to June CT Page 2718 13, 1996, the Board had an obligation to "select, identify, program and service the plaintiff' pursuant to the IDEA. On June 13, 1996, the Board violated its obligations to the plaintiff under the IDEA. The violation was due to an intentional and malicious threat from Kluth that if the plaintiff did not agree with Kluth's proposals, educational services that the Board was obligated to provide would be withheld from the plaintiff. The plaintiff retained an attorney and commenced a due process hearing in order to obtain the services. As a result of such hearing, the defendants subsequently provided substantial and significant evaluation, consultation and additional services to the plaintiff and, therefore, the plaintiff is a prevailing party under the IDEA and is entitled to attorney's fees and costs.
The second count of the complaint seeks damages pursuant to § 504 of the Rehabilitation Act. It alleges that the plaintiff has exhausted all administrative remedies available to him by law. It also alleges that he was damaged educationally and emotionally by the failure of the Board to provide appropriate evaluations, identifications and an individualized educational plan prior to June 13, 1996.
The third count alleges a claim of intentional infliction of emotional distress against Kluth. It alleges that Kluth failed to advise the plaintiff's parents of their rights, threatened to withhold services from the plaintiff if the parents did not agree to the proposals regarding the plaintiff's educational program prior to June 13, 1996, and caused the members of the Planning and Placement Team (PPT) to deny services to which the plaintiff was entitled under the IDEA. On July 12, 1999, the defendants filed a motion for summary judgment on the ground that there are no genuine issues of material fact and the defendants are entitled to judgment as a matter of law as to all counts of the complaint.[2] The plaintiff did not file any documents in opposition to the motion, nor was plaintiff's counsel present for oral argument on the motion.[3]
The following additional facts, which set forth the plaintiff's individual special education background, are excerpted from the proof submitted by the defendants. Prior to the fall of 1996, the plaintiff was enrolled at Fox Run Elementary School in Norwalk. The Board convened several PPT meetings to identify and develop an appropriate educational program for the plaintiff.[4] On November 2, 1995, at a PPT meeting, it was decided that the plaintiff would receive services for reading and language arts, phonics analysis assistance and educational counseling. At the next PPT meeting on March 5, 1996, the behavioral component of the plaintiff's individual educational program was reviewed. A psychiatric evaluation of the plaintiff was also scheduled. At a PPT meeting on April CT Page 2719 2, 1996, the PPT reviewed the psychiatric evaluation and revised the plaintiff's behavior modification plan.
At the request of the plaintiff's parents, the PPT convened a meeting on May 13, 1996, where the parents informed the PPT that the plaintiff was receiving private tutoring at the parents' expense. They requested that the Board pay for the private tutoring. They also expressed concerns regarding the plaintiff's educational progress and the possibility that the plaintiff had attention deficit disorder (ADD). The parents inquired about the necessity for an independent evaluation of the plaintiff. The PPT determined that the plaintiff's educational progress and possible need for independent evaluation could be ascertained at the plaintiff's annual review PPT meeting that was to take place on May 30, 1996. During the course of the meeting, Ms. Shippee, a PPT member, offered to explain to the parents of their due process rights and to provide to the parents another copy of their rights. The parents declined both offers.
At the annual review PPT meeting on May 30, 1996, the plaintiff's parents indicated to the PPT that they were no longer requesting an independent evaluation of the plaintiff and that they decided to enroll the plaintiff at a different Norwalk public school, Tracey Elementary School, in the fall of the upcoming school year. The PPT determined that the plaintiff would benefit from the continuance of the specialized instruction that was being provided to him.
At the plaintiff's next PPT meeting on June 21, 1996, his parents informed the PPT that they had removed him from school after a behavioral incident occurred at school approximately two weeks prior to the meeting. The PPT agreed to pay for the private tutoring the plaintiff received during the two weeks he had been removed from school and continuing until the start of the next school year. The PPT also agreed to provide independent educational and psychological evaluations of the plaintiff.
The PPT was convened again on October 29, 1996, in order to consider the plaintiff's independent evaluations, the implementation of the PPT's recommendations of the June 21, 1996 meeting, and the plaintiff's adjustment to the Tracey School. Based on the independent evaluations, the PPT determined that the plaintiff did not have ADD, and the plaintiff was doing well at the new school environment.
A review of the proof submitted to this court shows that no due process adjudication before an impartial hearing officer of the State of Connecticut Department of Education was ever heard, or requested, at any relevant time by the plaintiff or the Board.[5]
CT Page 2720
On May 14, 1997, the plaintiff's parents filed a suit on behalf of the plaintiff in the United States District Court for the District of Connecticut against the Board and Kluth. The federal complaint contains virtually the same counts and allegations that exist in the complaint in this case. On September 19, 1997, the federal complaint was dismissed for failure to comply with Local Civil Rule 38, which implements Federal Rule of Civil Procedure 26(f), and judgment was entered in favor of the defendants. The plaintiff subsequently filed the present action with this court.
 DISCUSSION
"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . ." (Internal quotation marks omitted; brackets omitted.) Miles v. Foley,253 Conn. 381, 385, 752 A.2d 503 (2000). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue of material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact . . . (Citations omitted; internal quotation marks omitted; brackets omitted.) Id., 386. A party opposing a motion for summary judgment is "entitled, indeed obligated, to file an affidavit reciting evidentiary matter to establish the existence of a genuine issue as to a material fact." Conference Center Ltd. v.TRC, 189 Conn. 212, 217, 455 A.2d 857 (1983). If the adverse party does not submit facts showing that there is an issue of fact, the court is entitled to rely upon the facts stated in the affidavits submitted by the moving party. Kakadelis v. DeFabritis, 191 Conn. 276, 280-81, 464 A.2d 57
(1983).
The defendants, in support of their motion, argue that: (1) the present action is barred by the doctrines of res judicata and collateral estoppel; (2) the court does not have jurisdiction to award attorney's fees and costs under the IDEA; (3) even if the court has jurisdiction to award attorney's fees and costs, the plaintiff was not a prevailing party entitled to such relief; (4) the plaintiff did not exhaust all available remedies in order to state a claim under section 504 of the Rehabilitation Act; (5) the plaintiff's claim of intentional infliction of emotional distress is barred by federal preemption; (6) the emotional distress claim is legally insufficient because Kluth's alleged conduct was not "extreme and outrageous" as a matter of law; and (7) because the CT Page 2721 defendants' actions were discretionary and expressly and implicitly granted by law, the claims against them are barred by the doctrine of governmental immunity. The court will address each of the defendants' arguments seriatim.
The defendants first argue that the plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel because the plaintiff brought identical claims in a federal action, which was dismissed for failure to comply with federal court discovery procedures. The court does not agree with the defendants' proposition. The assertion of res judicata or claim preclusion must be predicated upon a final decision on the merits. Marone v. Waterbury, 244 Conn. 1,12, 707 A.2d 725 (1998). "For res judicata purposes, a judgment is final if no further judicial action by the court rendering judgment is required to determine the matter litigated." (Internal quotation marks omitted; brackets omitted.) Id. The plaintiff's federal action was dismissed due to the procedural failure of the parties to confer and report to the court on a discovery conference.[6] This is analogous to a dismissal for failure to prosecute, which is not an adjudication on the merits that can be treated as res judicata. Milgrim v. Deluca, 195 Conn. 191,194-95, 487 A.2d 522 (1985). There was no final decision on the merits, therefore, the doctrine of res judicata is inapplicable. The doctrines of collateral estoppel and issue preclusion are likewise inapplicable. "It is well established that collateral estoppel . . . prohibits the relitigation of an issue when that issue was actually litigated . . . in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action." (Citations omitted; emphasis in original; internal quotation marks omitted; brackets omitted.) Willard v. Travelers Ins. Co., 247 Conn. 331,337, 721 A.2d 894 (1998). No issues were actually litigated in the federal action, therefore, the defendants cannot succeed on a claim of collateral estoppel.
The defendants next argue that the court does not have jurisdictional authority to award attorney's fees under the IDEA and summary judgment should be granted as to the first count of the complaint. The court agrees and holds that only federal district courts have the authority to award attorney's fees to a parent who is a prevailing party under the IDEA.
Section 1415(i) of the IDEA authorizes both the judicial review of alleged violations of the IDEA and the awarding of attorney's fees to the parents of a disabled child, who is a prevailing party under the administrative procedures set forth in the IDEA.[7] This case forces the court to face the question of whether it has jurisdiction to award CT Page 2722 attorney's fees concurrently with the federal district courts or whether the jurisdiction is solely vested with our federal counterparts. Since there is no appellate precedent on the issue, the court agrees with the sole Superior Court case and holds that it does not have authority under the IDEA to award attorney's fees to a prevailing party.
In State of Connecticut v. Department of Education, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 705783 (July 25, 1997, Maloney, J.) (20 Conn.L.Rptr. 170), the court held that it did not have the authority to award attorney's fees in an IDEA action. The court cited to a federal district court case, Curtis K. v.Sioux City Community School District, 895 F. Sup. 1197 (N.D.Iowa 1995), in deciding whether the jurisdiction was concurrent. State ofConnecticut v. Department of Education, supra, 20 Conn.L.Rptr. 171.
The court in Curtis K. differentiates the causes of action set forth in the IDEA. Curtis K. v. Sioux City Community School District, supra,895 F. Sup. 1209. The IDEA authorizes both federal and state courts to hear an action brought by a person who is aggrieved by the findings and decisions of the procedures set forth in the IDEA. 20 U.S.C. supra, § 1415(i)(2). In a separate subsection, the IDEA authorizes the federal courts to hear actions brought under the IDEA without regard to the amount in controversy. 20 U.S.C. supra, § 1415(i)(3). In the same subsection, Congress authorized the courts to award attorney's fees to a prevailing party in an action or proceeding brought under the IDEA. Id. "Therefore, both the parties authorized to pursue the two kinds of actions, judicial review and an action for fees, and the court or courts authorized to hear them are different." Curtis K. v. Sioux City CommunitySchool District, supra, 895 F. Sup. 1210. "The IDEA itself makes it clear that under its provisions an action for attorneys fees and an action for judicial review are entirely separate. . . . A fee claim action under the IDEA is . . . an action brought exclusively pursuant to federal law in federal court. (Citation omitted; emphasis in original; internal quotation marks omitted.) State of Connecticut v. Board ofEducation, supra, 20 Conn.L.Rptr. 171.
This court finds that the law articulated in State of Connecticut v.Board of Education, supra; and Curtis K. v. Sioux City Community SchoolDistrict, supra, correctly interprets the language and intent of the IDEA. This outcome is particularly appropriate here where the plaintiff initially sought review in federal court. The plaintiff is entitled to bring an action for judicial review under the IDEA in state court; however, his claim for attorney's fees must be brought in federal court. Accordingly, the defendants' motion for summary judgment as to the first count is granted.[8]
CT Page 2723
The plaintiff alleges in the second count that the Board violated section 504 of the Rehabilitation Act[9] by failing to provide appropriate evaluations, identifications and an individualized education plan prior to June 13, 1996. The defendants argue that summary judgment is appropriate because the plaintiff has failed to exhaust all the available administrative remedies and, thus, the plaintiff cannot continue to assert the claim in this court. The court finds that, in the present case, the administrative procedures set forth in the IDEA also apply to the Rehabilitation Act claim and that the plaintiff has failed to exhaust those procedures.
Congress enacted the IDEA to ensure that all handicapped students receive a free and appropriate education. Honig v. Doe, 484 U.S. 305,309, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). The establishment of an individual educational program (IEP) for each child was central to the congressional plan of empowering disabled students with substantial education rights. Id., 310-11. Each disabled student is to have an IEP, which will set forth the student's present performance ability, the student's short and long term goals, specific services to help the student meet the goals, and evaluation and performance criteria that will enable the local education agencies to monitor and modify the student's IEP. Id., 311.
The enactment of the IDEA also established procedural safeguards ensuring that parents of disabled students will have the opportunity to be closely involved with the decision-making process of their child's educational development. Id., 311-12. If a parent has a complaint concerning the school system's furnishing of a free and appropriate education, the parent can initiate a due process hearing before an impartial state education official. Honig v. Doe, supra, 484 U.S. 312; see also 20 U.S.C. supra, §§ 1415(f)[10] and (g)[11] General Statutes § 10-76h.
Although the second count of the complaint alleges a violation of the Rehabilitation Act, "Connecticut has the same system for hearing § 504 and IDEA claims." Lillbask v. Sergi, 117 F. Sup.2d 182, 191
(D.Conn. 2000). The IDEA relevantly states, "[n]othing in this title . . . shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA] . . . theRehabilitation Act . . . or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this part [20 U.S.C. § 1411 et seq.], the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this part." (Emphasis added.)20 U.S.C. § 1415 (1). The explicit reference to the Rehabilitation CT Page 2724 Act manifests the congressional intent to require administrative remedy exhaustion where the relief sought could have been brought in as an IDEA action. In cases such as the present, where claims of violations under the IDEA and the Rehabilitation Act are joined, complete exhaustion of the administrative remedies set forth in the IDEA is necessary to prevent the circumvention of the procedures by simply adding on a claim of a Rehabilitation Act violation. Calhoun v. Illinois State Bd. of Educ.,550 F. Sup. 796, 803 (N.D.Ill. 1982); see also Hopes v. Cortines,872 F. Sup. 14, 20-21 (E.D.N.Y. 1995), aff'd, 69 F.3d 687 (2d Cir. 1995) (actions brought under Rehabilitation Act generally do not require administrative procedure exhaustion, except when seeking relief available under IDEA); Tyson v. Kanawha County Bd. of Educ., 22 F. Sup.2d 535, 538
(S.D.W. Va. 1997).
The second count of the complaint merely incorporates the allegations of IDEA violations found in the first count. The plaintiff seeks relief that can be afforded by the rights of action set forth in § 1415 of the IDEA. Accordingly, the court finds that the plaintiff's claim of a violation of the Rehabilitation Act is subject to the exhaustion procedures set forth in the IDEA.
Only after the procedural safeguards set forth in the IDEA are exhausted may a parent seek judicial review in the Superior Court. Garrov. State of Connecticut, 23 F.3d 734, 737 (2d Cir. 1994); General Statutes § 10-76h (d)(4) (parent may appeal decision of the state hearing officer to Superior Court under procedures set forth in administrative appeal statute, General Statutes § 4-183). The administrative impartial due process hearing is, in fact, a prerequisite to filing an action in court. W.G. v. Senatore, 18 F.3d 60, 62 (2d Cir. 1992). "The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . The doctrine . . . furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review. . . . Most important, a favorable outcome will render review by the court unnecessary [because]. . . . A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene." Thus, the two part rationale for the exhaustion doctrine is: (1) to effectuate the legislative intent that the issue in question be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing court the benefit of the local board's judgment . . . and (2) to relieve courts of the burden of prematurely deciding questions that may be resolved satisfactorily through the CT Page 2725 administrative process." (Citations omitted; internal quotation marks omitted.) Johnson v. Statewide Grievance Committee, 248 Conn. 87, 95-96,726 A.2d 1154 (1999). There are narrow exceptions to the strict adherence to the exhaustion doctrine. "[A] party aggrieved by a decision of an administrative agency may be excused from exhaustion of administrative remedies if: [1] recourse to the administrative remedy would be futile or inadequate . . . [2] the procedures followed by the administrative agency are constitutionally infirm . . . or [3] injunctive relief from an agency decision is necessary to prevent immediate and irreparable harm." (Citations omitted.) Id., 103. The plaintiff alleges, very simply, that he exhausted all administrative remedies. He submits, however, no proof showing an impartial due process hearing before the Department of Education was ever conducted or even requested. In opposing a motion for summary judgment, mere assertions cannot be used alone, but must be supported by evidence disclosing the existence of a material fact.Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 553-54, 707 A.2d 15
(1998). Moreover, the plaintiff has failed to offer an excuse for the premature filing of the present suit. The defendants have submitted affidavits showing that the plaintiff has never requested nor had a hearing before an impartial official. Accordingly, the court finds that the defendants have met their burden of showing there are no genuine issues of material fact on whether the plaintiff has exhausted all administrative remedies prior to filing the present action. The motion for summary judgment as to the second count is granted.
As to the third count of intentional infliction of emotional distress against Kluth, the defendants argue that the claim is legally deficient because the allegations do not rise to the level of "extreme and outrageous" conduct necessary to support such an action. The court agrees with the defendants' conclusion that summary judgment should be granted.[12]
In order to establish the existence of intentional infliction of emotional distress, "it must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that theconduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Emphasis added; internal quotation marks omitted; brackets omitted.) Parsons v. UnitedTechnologies Corp., 243 Conn. 66, 101, 700 A.2d 655 (1997). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a CT Page 2726 nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . Thus, it is the intent to cause injury that is the gravamen of the tort." (Citations omitted; internal quotation marks omitted; brackets omitted.) DeLaurentis v. New Haven,220 Conn. 225, 267, 597 A.2d 807 (1991). Insults, indignities, threats, annoyances, petty oppressions or trivialities do not justify a claim of intentional infliction of emotional distress. Ferraro v. The Stop ShopSupermarket, Superior Court, judicial district of New Haven, Docket No. 388031 (May 24, 2000, Silbert, J.); Perrelli v. Southern New EnglandTelephone Co., Superior Court, judicial district of New Haven, Docket No. 399274 (April 4, 2000, Blue, J.); Rosenberg v. Meriden HousingAuthority, Superior Court, judicial district of New Haven at New Haven, Docket No. 377376 (October 29, 1999, Licari, J.); Hiers v. Cohen,31 Conn. Sup. 305, 308-309, 329 A.2d 609 (1973). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Perrelli v. Southern New England Telephone Co., supra, Superior Court, Docket No. 399274; DeNault v. Connecticut General LifeIns. Co., Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 050418 (June 29, 1999, Corradino, J.); Mellaly v.Eastman Kodak Co., 42 Conn. Sup. 17, 19 n. 1, 597 A.2d 846 (1991).
The plaintiff alleges that Kluth failed to advise the plaintiff's parents of their rights, threatened to withhold services from the plaintiff if the parents did not agree to the PPT's proposals regarding the plaintiff's individual education program and caused the members of the PPT to deny services to which the plaintiff was entitled under the IDEA. The plaintiff has submitted no proof to support the claim of emotional distress.
Section 1415(d) of the IDEA requires the school system to provide to the parents of a disabled child a notice of the procedural safeguards available to them. 20 U.S.C. § 1415 (d). The notice of the parents' rights is to include a full and clear explanation of the rights of the parents under the IDEA. 20 U.S.C. § 1415 (d)(2). In the present case, at the plaintiff's PPT meeting on May 13, 1996, the plaintiff's parents refused both another copy of a notice of the available procedural safeguards and an oral explanation of their rights enumerated in the notice. In addition, the defendants were excused from routinely providing a copy of rights to the plaintiff's' parents because the parents fully participated in the PPT meetings and the development of the plaintiff's IEP, and consequently they were accorded "meaningful involvement with the education placement of their child . . . thereby fulfilling the goal of the IDEA's procedural requirements." (Citations omitted; internal quotation marks omitted.) Gregory M. v. State Board of Ed. of Conn.,891 F. Sup. 695, 700 (D.Conn. 1995); see also Doe v. Defendant I,
CT Page 2727898 F.2d 1186, 1191 (6th Cir. 1990) (procedural requirements set forth in § 1415 of IDEA are met where there is full parental participation in the child's IEP). Thus, the court concludes that Kluth did not exhibit extreme and outrageous conduct in any, or in the lack of, advisement to the plaintiff's parents as to their due process rights under the IDEA.
The allegations of threats and prepossessions also do not evince extreme or outrageous conduct. Kluth, in her position as the director of special education of Norwalk Board of Education, directs and coordinates all PPT meetings and procedures and serves as an ex officio member of the PPT. Her responsibilities include close dealings with members of PPTs. There is, however, no evidence of a threat from any person to withhold services from the plaintiff. Nor is there evidence of an inducement by Kluth to cause the PPT to deny services.[13] Moreover, Kluth was under no duty to inform the plaintiff's parents of their rights after they declined an offer of explanation and an offer of a written copy of their rights under the IDEA at the PPT meeting on May 13, 1996. Kluth's conduct and actions involving the plaintiff do not approach, let alone exceed, the bounds usually tolerated by a decent society. Thus, the court finds that there are no genuine issues of material fact on whether the defendant Kluth's actions were extreme and outrageous, and summary judgment as to the third count of the complaint is completely warranted.[14]
Recapitulating, the defendants' motion for summary judgment on the first count of the complaint is granted because the court does not have jurisdictional authority to award attorney's fees under the IDEA. As for count two, the defendants' motion is granted because there are no genuine issues of material fact as to whether the plaintiff exhausted all available remedies under the IDEA. Finally, the defendants' motion as to the third count of intentional infliction of emotional distress is granted because there are no issues of material fact as to whether Kluth's conduct in her dealings with the plaintiff were extreme and outrageous.
Adams, J.